THE BELCHER SUGAR REFINING COMPANY, *Appellant*, v. THE ST. LOUIS GRAIN ELEVATOR COMPANY.

1. **Condemnation of Private Property for Public use:** DEDICATION. When private property is condemned or dedicated for one public use, it cannot be appropriated to another and different use, or be appropriated to private use.

2 ———: TITLE: DIFFERENT USE. The fee simple title is not acquired by proceedings condemning private property for public use, and if

| | |
|---|---|
| 82 | 121 |
| 100 | 514 |
| 36a | 372 |
| 82 | 121 |
| 101 | 201 |
| 41a | 72 |
| 82 | 121 |
| 105 | 581 |
| 82 | 121 |
| 50a | 91 |
| 50a | 471 |
| 82 | 121 |
| 120 | 160 |
| 82 | 121 |
| 121 | 180 |
| 58a | 520 |
| 82 | 121 |
| 126 | 37 |
| 82 | 121 |
| 134 | 402 |
| 134 | 562 |
| 134 | 571 |
| 82 | 121 |
| 145 | 396 |
| 82 | 121 |
| 169 | ³129 |

such property is to be used for a purpose other than that for which it was condemned, the original owner must first be compensated for such additional different use.

3. ———: ———: ———. Where the city of St. Louis condemned private property for use as a wharf, it cannot lease it unconditionally for a term of years to be used in the prosecution of private business and for private gain.

4. ———: CONSTRUCTION. Laws authorizing the taking of private property for public use, should be strictly construed and closely scrutinized.

*Appeal from St. Louis Court of Appeals.*

REVERSED.

*Smith P. Gault* for appellant.

The lease of the city to the defendant and defendant's proposed occupation of the premises are illegal, 1st, Because it is a diversion of the use in the property condemned, and a violation of the trust assumed by the city ; 2nd, It is placing an additional burden upon the property, the fee thereof being in the plaintiff, not contemplated in the condemnation proceedings ; 3rd, It being an additional burden, if the proposed warehouse is considered for public use, it is taking and damaging plaintiff's property without compensation, contrary to the common law, and section 21, article 2 of the constitution of Missouri; if considered for private use, it is in violation of section 20, same article; 4th, It is a violation of the city's implied contract made with the plaintiff, when it paid to the city the $2,350, as benefits to his property, that the city would hold the property strictly in accordance with the purposes expressed, and by which the company would be benefited, and that they would not be changed, so that those benefits would be destroyed; 5th, On all these questions the plaintiff, by reason of being adjoining and adjacent to this portion of the wharf, as well as the owner in fee of the premises, may invoke the power of a court of equity, and there obtain protection by injunc-

tion from the threatened wrong. *Allen v. Jones,* 48 Ind. 442; *Inlay v. Railroad Co.,* 26 Conn. 255; *Hart v. Burnett,* 15 Cal. 492; *Williams v. Plank Road Co.,* 21 Mo. 582; *Barney v. Keokuk,* 94 U. S. 324; *Rutherford v. Taylor,* 38 Mo. 315; *Price v. Thompson,* 48 Mo. 363; *Ill., etc., Canal Co., v. St. Louis,* 2 Dill. C. C. 70, *Pres. Soc. v. Railroad Co.,* 3 Hill 567; *Louisville v. Louisville Rolling Mill Co.,* 3 Bush 416; *Trenor v. Jackson,* 46 How. Pr. 397; Thompson on Highways, p. 1; *Board of Education v. Edson,* 18 Ohio St. 225; *Warren v. Lyons City,* 22 Iowa 357; *State v. Laverack,* 34 N. J. L. 203; *Barclay v. Howell's Lessee,* 6 Pet. 31; *Lade v. Shepherd,* 2 Strange 1004.

*Broadhead & Haeussler* for respondent.

"The mode of using property dedicated for a wharf may change from time to time, as the wants of commerce, or of the public may require." *Illinois Canal Co. v. St. Louis,* 2 Dill. C. C. 91. If the conveniences of commerce require it, the city may use the wharf so as to accommodate those requirements, or it may authorize others to do so; and how long it may be so used, must necessarily depend upon the judgment and discretion of the State. But if this were not so, the wharf belongs to the city, and no one, therefore, but the State has the right to question its authority for using it as provided for in this case, or to ask the court to prohibit it. As to the authority of the State to vest the fee in the city, see *Rexford v. Knight,* 1 Kernan 308; *Hayward v. The Mayor,* 3 Selden 314; *Ellis v. Railroad Co.,* 51 Mo. 202. As early as the act of December 18th, 1824, (see Rev. Code 1825, p. 763,) all recorded plats of towns and villages vested the fee simple title in the county of all property named or intended for public use; and the act of February 20th, 1865, was intended to pass the title of such property from the county to the city, and also to provide that the city should own all property thereafter condemned or dedicated for public use.

HENRY, J.—The plaintiff owned in the city of St. Louis all of city block No. 225, and nearly all of block 226. These blocks extend to the Mississippi river, and in 1867, in condemnation proceedings instituted by the city, a portion of the property was condemned for wharf purposes, and plaintiff was allowed $23,993 damages, and was assessed for benefits $2,350. The difference between the two amounts was paid to plaintiff, who subsequently acquired all that it owns of block 226, except thirty feet which it owned when the condemnation was had. In 1871 the city graded the wharf in front of these blocks, and in 1872 riprapped 350 feet of the wharf, but the work was destroyed by the high waters in 1873. On the 8th of August, 1879, the city leased to the defendant for twenty years, at an unusual rent of $300, all of the property condemned in front of block 226, 319 feet along the river by ninety feet deep.

The city charter then in force authorized the city: " To establish, open, vacate, alter, widen, extend, pave, and otherwise improve all wharves," to erect docks and wharves and "to set aside or lease portions of the unpaved wharf for special purposes, such as the erection of sheds, elevators, and warehouses,     *     *     and for any purpose tending to facilitate the trade of the city; but no permit to use any portion of the wharf or any lease of the same shall be granted for a term exceeding fifty years."

The plaintiff is engaged in the business of refining sugar, and owns blocks of land west of those fronting on the river, on which are extensive buildings, used in its business. They receive annually 75,000 tons of sugar which is unloaded nearly one mile below their buildings, and this suit is to restrain defendant from erecting a large warehouse on the wharf, which will occupy all of said wharf in front of block 226. That portion of the wharf which was leased to defendant was leased to be used " for erecting and maintaining a shed, or warehouse for the storage and handling

of grain, or other merchandise, in connection with the use of its elevator, and    *    *    to lay railroad tracks on said portion of said wharf, and to connect the same with the tracks of any railroad having a right to lay and operate a track on the wharf or levee." The plaintiff's bill was dismissed by the circuit court on the hearing of the cause, and on appeal to the court of appeals, the judgment was affirmed and plaintiff has appealed to this court.

Several important questions are discussed in the briefs of counsel, but there is a controlling question in the case which, in the view we take of it, renders it unnecessary to consider any other. It is conceded, and the authorities are all in accord on the subject, that, when private property is condemned, or dedicated, for one public use, it cannot be appropriated to another and different use. The doctrine is tersely stated in the case of *Imlay v. Union Branch R. R. Co.*, 26 Conn. 255, as follows: "When land is condemned for a special purpose, on the score of public utility, the sequestration is limited to that particular use." In *Williams v. The Natural Bridge Plank Road Co.*, 21 Mo. 582, the doctrine was concisely announced by Judge Scott, in the following language: "The grant of a right of way for one purpose will not authorize the use of the road for another and different purpose."

Our constitution, when the property in question was condemned, declared: "That no private property ought to be taken, or applied to public use, without just compensation." The fee simple title was not acquired by the city under the condemnation proceedings, and all the compensation plaintiff received, was for the use of his property for a public wharf. If any burden, other than that, is to be imposed upon it, by the city of St. Louis, the plaintiff must first be compensated for such additional different use. The city of St. Louis has no right to erect a permanent building upon the property condemned, except for the use of the wharf, so occupied and of the building so erected for legitimate wharf purposes. The legislature of the

State could not authorize any other use of the property of the city, than that for which it was condemned.

These elementary propositions, we think, will not be controverted, but the contention is, that elevators and warehouses in great commercial cities, have become necessities for handling grain and other produce, and that the erection and use of such structures for shipping and unloading produce upon and from steamboats, and other vessels, is not a different use of the property from that for which it was originally condemned.    This proposition may be conceded.    As was said by Judge Dillon in *The Illinois etc., Canal Co. v. St. Louis*, 2 Dillon C. C. R. 82 :  " The extent of the dedication, its scope remains the same, but the mode of using property dedicated for a wharf may change, from time to time as the wants of commerce, or the public may require, and this the dedicator is presumed, to contemplate, when he makes the dedication."    In order to meet the demands of commerce, and the changed methods of handling grain and other produce the city may license the erection of elevators and warehouses in connection with them, upon the unpaved portion of the wharf, without violating the rights of the owners of the fee, but she has no right to lease any portion of it for a term of years without a reservation of the right to cancel the lease, whenever it should become necessary to pave and extend the wharf so leased.    No right to authorize the erection of such buildings, as that which it is alleged the defendant is about to erect upon the wharf, without reserving a control over the building, and the uses to which it may be applied.    Otherwise it is but a lease of a portion of the land condemned solely for public use for wharf purposes, for the private use and private gain of the lessee.

The owner of the building may open or close it at his pleasure, and discriminate between shippers and receivers of produce, and make his as strictly a private business, as if a retail dry goods merchant were permitted to erect a building on the wharf to conduct his business

in. There is no reservation by the city in the lease to defendant, of any control whatever of the building, or business. The property is conveyed away from the city for twenty years, and, if at any time within that period, it should become necessary to extend the wharf and pave it in front of the block in question, the needed work could not be done. The city has no right, and can acquire none from the legislature, to make such a disposition of the property condemned for wharf purposes, as will prevent her, in the event it becomes necessary to extend and pave the wharf, from doing its duty in that respect. Laws which authorize the taking of private property for public use should be strictly construed and closely scrutinized. Nothing justifies such an invasion of private rights, but an imperative public necessity, and the exercise of this right of eminent domain, under color of which so many iniquities have been committed, should be held strictly within the buonds prescribed by the constitution and the law.

It would not do to permit property condemned for one purpose to be used for another and different purpose, or property condemned for public use to be appropriated to private use. The latter can no more be done, than could the property in the first instance have been condemned for such use. The authorities which support the foregoing propositions of law are numerous, but we will content ourselves with the citation of the following:

*Imlay v. Union Br. R. R. Co.*, 26 Conn. 255; *Williams v. Natural Bridge Plank Road Co.*, 21 Mo. 582; *Rutherford v. Taylor*, 38 Mo. 315; *Price v. Thompson*, 48 Mo. 363; *Ill., etc., Canal Co. v. St. Louis*, 2 Dillon C. C. 82; *Pres. Society v. Auburn, etc., R. R. Co.*, 3 Hill 567; *Trenor v. Jackson*, 46 How, Pr. R. 397; *Louisville v. Louisville Rolliny Mill Co.*, 3 Bush. 416; *Barclay v. Howell's Lessee*, 6 Pet. 498; *State v. Laverack*, 34 N. J. L. 202; *Warren v. Lyons City*, 22 Iowa 357; *Board Education v. Edson*, 18 Ohio St. 225; *Barney v. Keokuk*, 94 U. S. 324.

The judgment of the court of appeals is reversed and

the cause remanded to that court, which will remand it to the circuit court, with directions to proceed with the cause, in conformity with this opinion.   All concur