(No. 5109. Decided December 28, 1904.)

THE STATE OF WASHINGTON, *on the Relation of the Attorney General, Plaintiff,* v. THE SUPERIOR COURT FOR CHELAN COUNTY *et al., Defendants.*[1]

EMINENT DOMAIN—STATE LANDS—CONDEMNATION OF SCHOOL LANDS BY WATER COMPANY. There is no authority in this state for the condemnation of state school lands by a water company for the purpose of procuring water for domestic purposes, since the statutes do not expressly so provide, and they must be strictly construed.

Certiorari, issued upon the application of the Attorney General, to review a judgment of the superior court for Chelan county, Martin, J., entered March 17, 1904, appropriating certain state school lands, after overruling a demurrer to the petition and a motion to dismiss the proceeding for want of jurisdiction. Reversed.

*The Attorney General* and *Vaughn Tanner,* for plaintiff.

*Fred Reeves,* for defendants.

HADLEY, J.—Application was made here for a writ of review for the purpose of reviewing the action of the lower court in a condemnation proceeding. Upon issu-

[1]Report in 78 Pac. 1011.

ance of the writ the record was certified to this court, and a hearing was had. The application was made by the state on the relation of the attorney general. The trial court entered an order adjudging that the petitioner below, the Home Water Company, a corporation, is entitled to condemn certain lands in Chelan county, the same being common school lands and belonging to the state. The alleged purpose of the condemnation is that of "procuring water for household and domestic purposes, and also for a reservoir site."

The first contention urged by the attorney general is that there is no law authorizing the condemnation of common school lands for such a purpose as stated above. Our attention is directed to the history of legislation in this state upon the subject of the power of corporations to condemn. In 1873 the legislature of the territory passed an act entitled, "An act to provide for the formation of corporations." Laws 1873, p. 398. The act repealed all former laws upon the subject. It was subdivided into four chapters. The third chapter is prefaced by the following words: "Corporations when authorized to appropriate land for corporate purposes." We fail to find in said chapter any expression that directly, or by implication, confers power upon corporations to condemn lands belonging to the state. It is true, the first section states that corporations organized for certain purposes "shall have a right to enter upon any land between the termini thereof, etc." The following remark made by this court in *Seattle & Montana R. Co. v. State,* 7 Wash. 150, 34 Pac. 551, 38 Am. St. 866, 22 L. R. A. 217, is pertinent:

"As well might it be contended that because a railroad is authorized to enter upon and condemn 'any' land for its tracks, depots, shops, round houses, etc., it could, by

serving notice upon the auditor of Thurston county, take the entire ten acres upon which the state capitol stands for a depot and shops."

The entire context of the chapter shows that the legislature was considering lands of private ownership, and also the right to appropriate portions of public highways or public grounds. The term "public grounds" cannot be said to comprehend common school lands, but rather tracts that are used and occupied for some public purpose. The act of 1873 conferred no authority to condemn any lands except upon corporations organized for the construction of "any railroad, macadamized road, plank road, clay road, canal, or bridge." It will thus be seen that the purposes of the condemnation, in the case at bar, as stated above, are not comprehended in the act of 1873, even as relates to private property. The legislature of 1879, however, passed an act amendatory of that of 1873. See, Laws 1879, p. 134. The first section of the act is as follows:

"That all corporations, authorized to do business in the territory, and who have been or may hereafter be organized for the purpose of erecting and maintaining flumes or aqueducts to convey water for consumption or for mining, irrigation, milling or other industrial purposes, shall have the same right to appropriate lands for necessary corporate purposes, and under the same regulations and instructions as are provided for other corporations in the act to which this is amendatory, and such corporations organized for such purposes, in order to carry out the object of their incorporation, are authorized to take and use any water not otherwise legally appropriated or legally claimed."

That section appears to confer power to appropriate lands for such corporate purposes as are sought to be accomplished here. It will be noticed, however, that the new statute does not enlarge upon that of 1873 as to what

lands may be appropriated. It is argued by the state that the said act of 1879 is unconstitutional and void for the alleged reason that its title is insufficient to include the subject of eminent domain. We do not find it necessary to pass upon that subject, for the reason, as we have seen, that the act does not attempt to confer power to condemn school lands. The next legislation to which our attention is directed is that of an act passed in 1890, regulating the procedure in condemnation cases and superseding all former laws upon the subject. Laws 1890, p. 294. The avowed purpose of the act, as expressed in its title, is simply to regulate the mode of procedure. The first section describes how the proceeding shall be initiated by petition, and the second section treats of the subject of notice, and how it shall be served. In the latter section appears the following:

"In case the land, real estate, premises or other property sought to be appropriated is state, school or county land, the notice shall be served on the auditor of the county in which the land, real estate, premises or other property sought to be appropriated is situated."

From the fact that the words "state, school or county land" are used as above quoted, it is argued here that the power to condemn such lands exists, and is applicable to the subject matter of this case. At the time of the passage of this act there was no law authorizing the condemnation of school lands; at least, our attention has not been called to any such statute. If the power to condemn exists in the said statute of 1890, it is discoverable by implication only. In using the words, the legislature was speaking of the manner of serving the notice in condemnation cases, and the words were clearly intended to apply only to cases where the power to condemn should be created by other independent acts. That the legisla-

ture did not intend to confer the power to condemn school lands by the act of 1890 is accentuated by the fact that, in 1895, it did expressly declare that such lands may be appropriated by corporations organized for the construction of "any railway, macadamized road, plank road, clay road, canal, or bridge." Laws 1895, p. 146, § 1. If such power had resided in the act of 1890, there was no necessity for the act of 1895, and the legislative construction is to the effect that the power did not exist prior to 1895. It will be observed, however, that the act of 1895 cannot be said to comprehend the power of corporations to condemn for the purpose of procuring and transmitting water for household and domestic purposes and for reservoir sites. Condemnation statutes, overriding, as they do, the high right of private property, and being in derogation of common right, must be strictly construed. *Alabama Great So. Rd. v. Gilbert,* 71 Ga. 591; *Chicago etc. R. Co. v. Wiltse,* 116 Ill. 449, 6 N. E. 49; *Spofford v. Bucksport etc. R. Co.,* 66 Me. 26; *Binney's Case,* 2 Bland's Ch. (Md.), 95; *Belcher Sugar Ref. Co. v. St. Louis Grain Elev. Co.,* 82 Mo. 121; *Matter of Water Com'rs of Amsterdam,* 96 N. Y. 351; *Miami Coal Co. v. Wigton,* 19 Ohio St. 560. Since the rule prevails that condemnation statutes must be strictly construed, as far as they relate to the taking of private property, it follows, with even more force, that the same rule must apply where the lands of the sovereign are sought to be taken. In *Hollister v. State* (Idaho), 71 Pac. 541, the court well said:

"That a people in their collective capacity, exercising the rights, privileges, duties and obligations of sovereignty, cannot be sued except by their consent is a principle too well established to require discussion."

25-36 WASH.

The authority to condemn state lands was under consideration in that case, and the court made it plain that, without clear statutory authority for such condemnation, the power does not exist, but found that a statute in Idaho expressly conferred the power, as applicable to the case then in hand. We conclude that no power is found in our statutes for the condemnation of school lands of the state, to be subjected to the purposes of the petitioning corporation in this case.

The state also argues, extensively, that condemnation should be denied for the reason that the use sought to be made of the land is not a public one, within the doctrine of *Morris v. Healy Lumber Co.,* 33 Wash. 451, 74 Pac. 662. In view of the fact that this corporation has not the power, in any event, to condemn the lands sought, it becomes unnecessary to discuss the question as to whether the use sought to be made of the lands is a private or public one.

The cause is remanded with instructions to the trial court to vacate the order of condemnation, sustain the demurrer to the petition, and grant the motion to dismiss the proceeding.

FULLERTON, C. J., and DUNBAR, ANDERS, and MOUNT, JJ., concur.