[No. 36600.　Department Two.　April 23, 1964.]

J. EDWARD FOOTE, *Appellant,* v. EDWARD W. HAYES *et al., Respondents.**

*Reported in 391 P. (2d) 551.

*Allen, DeGarmo & Leedy,* by *George Leedy,* for appellant.

*Ogden & Ogden,* by *Raymond D. Ogden, Jr.* and *Karr, Tuttle, Campbell, Koch & Grandberg,* by *Clarence Campbell,* for respondents Hayes *et al.*

*A. C. Van Soelen, John A. Logan,* and *Robert Ward Freedman,* for respondent Seattle.

HAMILTON, J.—On December 17, 1958, at about 6:15 p.m., J. Edward Foote, since deceased,[1] fell into a 16 to 18 foot deep side sewer trench adjacent to his residence property and was severely injured. He initiated this action against defendants seeking damages for his injuries. The trial court granted defendants' motions for summary judgment and dismissed the action. Plaintiff appeals.

On the evening of the mishap and at the time in question, it was rainy, windy, and pitch dark. Mr. Foote, age 62, was going home from his place of business in downtown Seattle. Sewer excavation in the area of his urban residence purportedly necessitated the parking of his automobile about a half block from his home. He did so, and proceeded onward on foot. It is alleged that the adjacent street light was out, and that there were no barricades or warning devices in his immediate path. As he approached the boundary of his property, he came upon that which obscurely appeared to him to be a trench cutting off access to his residence.

Some weeks before, Mr. Foote had contracted and paid for a side sewer line running to his property from the

---

[1]During the pendency of this action J. Edward Foote died. Mrs. Foote, as executrix of his estate, was by court order substituted as plaintiff.

main-trunk sewer line being installed along the center of the abutting street. When he left for work on the morning of December 17th, he knew work was to be commenced that day upon his side sewer line. On his pre-trial deposition, he stated he understood this side sewer work would be completed in one day.

As Mr. Foote stood in the cul de sac, formed by the main sewer excavation in the center of the street to his right, his neighbor's yard and hedge to his left, and the indistinct trench across his path, he mentally debated the problem of reaching his home. He rejected detouring through the darkened reaches of his neighbor's yard. He had previously tried and rejected approaching his home from the opposite direction. He apparently felt he would gain no advantage by attempting to cross the main sewer excavation. He recalled his observation of and experience with other trenches in the area which had been dug, filled, and left to settle several inches below the surface, and which were traversable by jumping. He decided to jump the excavation he was facing. Unfortunately, it had not been filled. He unexpectedly landed in the excavated dirt mounded on the opposite side, lost his balance, and fell back into the trench.

Plaintiff alleged that the defendants, respectively, were guilty of negligence in failing to provide adequate lighting, barricades, warning devices, or alternate means of access to plaintiff's premises. Defendants responded, denying liability, and affirmatively alleging assumption of the risk, the maxim volenti non fit injuria, and contributory negligence. Pre-trial oral examinations of Mr. Foote were conducted and transcribed, and written interrogatories exchanged. The defendants, respectively, filed motions and affidavits for summary judgment. Counter affidavits were submitted.

The trial court, after considering the pleadings, depositions, interrogatories, affidavits, and briefs of the parties granted the summary judgment from which plaintiff appeals.

■ The fundamental inquiry presented upon this appeal is whether there be any genuine issue of material fact arising from the allegations of negligence, contributory negligence, and volenti non fit injuria. In resolving the query so posed, we must consider the factual pattern presented through the medium of the pleadings, depositions, and affidavits in a light most favorable to the plaintiff. If reasonable men, so considering the factual pattern, might, upon the controlling issues, reach differing conclusions, the summary judgment cannot stand. *Balise v. Underwood,* 62 Wn. (2d) 195, 381 P. (2d) 966; *State ex rel. Bond v. State,* 62 Wn. (2d) 487, 383 P. (2d) 288. It is also essential to bear in mind that the burden of demonstrating that there exists no genuine issue of fact rests upon the defendants.

In the instant case, it is tacitly conceded by defendants there there were no specific barricades or warning devices which would alert a wayfarer to the presence of the side sewer trench in question. Likewise, it is not disputed that the street light in the proximate vicinity was not lit. It can be inferred from Mr. Foote's testimony that this latter condition had existed for two days. It can hardly be gainsaid that leaving, during hours of darkness, a deep, open, unlit, unbarricaded trench in the path of potential vehicular or pedestrian traffic constitutes negligence. Whether or not, under the circumstances here present, such constitutes negligence as a matter of law or fact, with respect to any one or more of the defendants need not now be decided. Suffice it to say that, so far as defendants' respective motions for summary judgment be concerned, a genuine issue of primary negligence exists upon the basis of the record as it now stands.

Defendants strongly urge, in support of the summary judgment, that the factual pattern presented indisputably establishes, as a matter of law, the applicability of the maxim volenti non fit injuria or the doctrine of contributory negligence. They argue that Mr. Foote knew of the excavation work going on in the general area, knew his side sewer ditch was to be dug on the day in question,

recognized at the time in question he was standing at the edge of an excavation of some type, and, despite the existence of other alternatives, elected, in the darkness, to attempt to jump the excavation. Thus, defendants assert Mr. Foote knowingly and voluntarily exposed himself to the resultant harm, or failed to exercise that care for his own safety which would have been exercised by a reasonably prudent man under the same or similar circumstances.

On the other hand, plaintiff contends Mr. Foote's testimony in his deposition demonstrates he had reason to believe that his side sewer trench had been dug and filled, that he was faced with an excavation of but slight depth easily traversable by jumping, and that traversing his neighbor's yard in the darkness presented greater hazards. Under these circumstances plaintiff claims the propriety of Mr. Foote's ensuing action becomes a question of fact.

Pertinent portions of Mr. Foote's pre-trial deposition testimony, about which the arguments revolve, are:

"Q. Will you tell me what happened up to the time that you went into the excavation? A. Well, I came walking along here. I had left my car because I wanted to be sure that the car didn't fall in one of these holes because I had helped a couple of guys out of them before, and I started walking up here and I got to the ditch, where the excavation was, and I saw that all right, but the man had told me they would be finished in a day and I figured it was filled then and I couldn't see. It was black as night, you know. It was raining and blowing and blacker than your hat, so I could see the hole was there but I had jumped them several times before. I figured they had been filled and settled because it was raining hard, and I jumped, but as I got across on the top the ground was filled up just a little bit. You know, not a big pile of dirt, but it was there and that threw me back and I wasn't prepared for that. Q. How wide was the hole that you attempted to jump? A. I don't know, but I would say two and a half feet probably. Q. Would it be fair to ask you this, and I will ask you this: did you consider the possibility of walking around that excavation? A. Oh, yes, but there wasn't any way to walk around it without going into my neighbor's yard and there was a big hedge at his place and in the back yard there is raspberry vines and everything and it is black and I

don't want to go wandering around his place because he is kind of a funny guy and he might take a shot at me, too. . . . Q. I am asking you this: When you got to the ditch you saw it? A. Yes. Q. And you debated whether you should detour or jump it, is that a fair statement? A. That's right. Q. How long did you stand there debating this, Mr. Foote? A. Well, it wasn't very long. I had jumped those ditches (filled in) before. The district had been torn up for —oh, at least a month. You know, we had to jump ditches and go around other roads and get stuck in the mud and everything else. . . . Q. Mr. Foote, was there any other way for you to reach your house other than to jump the ditch on the date and place of your accident? A. Well, when you put it like that why you could have somebody down on the next street give you a flashlight and take you through their house and through their yard. There was no logical way to get in there except jump that ditch."

In *Jorgensen v. Massart,* 61 Wn. (2d) 491, 494, 378 P. (2d) 941, an appeal from a summary judgment involving the issues of volenti non fit injuria and contributory negligence, we stated:

"The issues raised by this appeal included the three questions asked in *Kingwell v. Hart* (1954), 45 Wn. (2d) 401, 405, 406, 275 P. (2d) 431, 434, 435. The first two, *i.e.,*

" ' . . . Did plaintiff (1) know of and appreciate the danger or risk involved, and also (2) did he voluntarily consent to expose himself to it (*"voluntarily" including the meaning that defendant's conduct has left plaintiff a reasonable election or alternative. See Emerick v. Mayr, 39 Wn. (2d) 23, 25, 234 P. (2d) 1079 (1951)),* . . .' (Italics ours) must be answered in the affirmative to establish the defense of volenti non fit injuria. And the third question,

" ' . . . (3) was the exposure unreasonable, that is, was it such that a reasonable person in plaintiff's position would not expose himself to it, or, after accepting a reasonable risk, did plaintiff exercise proper care for his own protection against that risk.'

must be answered in the affirmative to establish contributory negligence."

Affording to Mr. Foote's testimony the truth and reasonable inferences to which it is entitled, we cannot say, as a matter of law, such testimony compels an affirmative answer to the questions posed. In our judgment, the minds

of reasonable men might well differ as to the extent of his knowledge and appreciation of the risk involved, the voluntariness of his exposure thereto, and the prudence of his actions under the circumstances as he presented them. The trial court erred in granting summary judgment.

The judgment of dismissal is reversed and the cause remanded for trial. Costs on appeal will abide final disposition of the case.

OTT, C. J., DONWORTH, WEAVER, and HALE, JJ., concur.