[No. 37711.     Department Two.     January 20, 1966.]

GUY STICKNEY, INC., *Respondent,* v. NADINE UNDERWOOD, *Individually and as Executrix, Appellant.\**

*\*Reported in 410 P.2d 7.*

*Powell, Livengood, Dunlap & Silvernale,* for appellant.

*Ostrander & Van Eaton* and *Robert H. Van Eaton,* for respondent.

FINLEY, J.—This lawsuit involves a controversy about the meaning and legal effect to be given certain language of an earnest money receipt and agreement. The fact pattern of the underlying real estate transaction was before us in *Underwood v. Sterner,* 63 Wn.2d 360, 387 P.2d 366 (1963). Therein, the defendant-purchaser, Joseph P. Sterner, appealed from a judgment of $50,000 entered in the trial court in favor of the plaintiff-vendor, Lucy N. Underwood. The plaintiff had sued for damages arising from the defendant's breach of a contract to purchase the plaintiff's commercial property.

We affirmed the judgment of the trial court except as to the amount of the judgment. In that respect, we limited the recovery of the plaintiff-owner to the amount specified ($25,000) in the bargained-for liquidated damages clause of the earnest money agreement.

Guy Stickney, Inc., initiated this action against Lucy N. Underwood subsequent to the filing of the remittitur in *Underwood v. Sterner, supra.* The plaintiff corporation was the realtor involved in the transaction between Underwood and Sterner. Its claim was predicated upon the following portions of the earnest money agreement:

On this date, ——————— I hereby approve and accept the sale set forth in the above agreement and agree to carry out all the terms thereof on the part of the seller and the undersigned further agrees to pay a commission of ——————— Dollars ($10,000.00) to the above agent for services. In the event earnest money is forfeited, it shall be apportioned to seller and agent equally, providing the amount to agent does not exceed the agreed

commission. I further acknowledge receipt of true copy of this agreement signed by both parties. *No commission shall be payable unless and until sale actually closes.* (Italics ours.)

The defendant-vendor's attorney was solely responsible for drafting the earnest money receipt and agreement, and he added the italicized sentence by typewritten interlineation to what was otherwise a commonly-used form of "EARNEST MONEY RECEIPT AND AGREEMENT."

The plaintiff broker in the present lawsuit prayed for relief in the form of a judgment for damages in the amount of $10,000—the maximum allowable upon a forfeiture of the earnest money—or, in the alternative, for an interest or lien to that extent in the judgment entered after remittitur in *Underwood v. Sterner, supra.* The defendant's amended answer admitted the execution of the earnest money receipt and agreement which was the basis of the plaintiff's claim herein. However, the amended answer set out the following affirmative defenses: (1) that the plaintiff corporation had not alleged that one "Larry Jackson," who had actually signed the earnest money agreement, was its employee; nor had it established its legal authority to act as a realtor in the state of Washington; (2) that the language of the agreement—"No commission shall be payable unless and until the sale actually closes."—was intended by the parties to preclude the plaintiff broker from recovering any compensation for its services unless the sale actually closed; and (3) that the plaintiff had breached its contractual and fiduciary responsibilities to the defendant by virtue of its disloyal, negligent and fraudulent conduct, and further that such conduct was the causal factor in preventing a consummation of the transaction, which resulted in a loss in excess of $60,000 to the defendant.

In addition, the defendant's amended answer set out, by way of counterclaim for damages, the allegations of fraud and disloyalty which were the basis of the third affirmative defense to the plaintiff's claim. The counterclaim further asked for dismissal of the plaintiff's claim.

The trial court rendered a summary judgment in favor of the plaintiff realtor. In effect, the trial court ruled that there was no genuine issue of material facts—either with respect to the plaintiff's claim or the defendant's counterclaim—and, as a matter of law, ruled: (1) in favor of the plaintiff on its complaint, and (2) dismissed the defendant's counterclaim with prejudice.

▪ We are convinced that the trial court's summary judgment was premature in all but one respect. There are no genuine issues of material fact in dispute with reference to the legal effect of the pertinent portions of the earnest money agreement set out above. Initially, it should be noted that contract language subject to interpretation is construed most strongly against the party who drafted it, or whose attorney prepared it. *Underwood v. Sterner, supra; Wise v. Farden,* 53 Wn.2d 162, 332 P.2d 454 (1958); Restatement, Contracts § 236(d) (1932). As mentioned heretofore, the record shows that the defendant's attorney selected a commonly-used form of "EARNEST MONEY RECEIPT AND AGREEMENT," and that he inserted therein the typewritten language that "No *commission* shall be payable unless and until sale actually closes."

▪ There should be no question as to whether or not a distinction in the law exists between a *"commission"* and an agreed-to *"apportionment of forfeited earnest money"*. *Haynes v. John Davis & Co.,* 22 Wn.2d 474, 156 P.2d 659 (1945); *West & Wheeler v. Longtin,* 118 Wash. 575, 204 Pac. 183 (1922); *Lawler v. Armstrong,* 53 Wash. 664, 102 Pac. 775 (1909); 12 Am. Jur. 2d *Brokers* § 210 (1964). The defendant-appellant asserts that this distinction is highly technical, and without foundation in the business practice; yet the form agreement selected by the defendant's attorney incorporates, and recognizes, the distinction! Note the following language:

> "In the event *earnest money is forfeited,* it shall be *apportioned* to seller and agent equally, providing the amount to agent does not exceed the *agreed commission*." (Italics ours.)

The trial judge would have been correct in entering what

we have previously denominated as an "interlocutory summary adjudication" pursuant to Rule of Pleading, Practice and Procedure 56(d). *Crosthwaite v. Crosthwaite,* 56 Wn.2d 838, 358 P.2d 978 (1960). The legal effect of the language hereinbefore quoted was to *apportion forfeited earnest money* between the plaintiff broker and the defendant vendor, but the plaintiff's share was to be no more than $10,000. The plaintiff had no right to a *commission* from the seller unless, and until, the sale actually occurred.

The defendant-appellant next claims that our denial of her petition for rehearing in *Underwood v. Sterner, supra,* necessarily limited the effect of that decision to enforcement of a *liquidated damages clause,* and the decision can not be construed as being tantamount to a judicial enforcement of the *forfeiture of earnest money* provided for in the earnest money agreement. The gravamen of Underwood's petition for rehearing was that the case should be remanded to the trial court for a determination of reasonable attorney's fees to be paid by the forfeiting purchaser in accordance with the provisions of his promissory note. But Underwood in that action *elected* to sue on the contract rather than on the $24,000 note, which, with $1,000 cash paid in, constituted the actual earnest money deposit. Consequently, we denied Underwood's petition for rehearing inasmuch as she had elected to sue for damages for the buyer's wrongful repudiation of the contract rather than suing on the note which was the major portion of the earnest money deposit. Our decision in that appeal simply limited the damages recoverable *for breach of the purchaser's contract* to the amount agreed upon in the liquidated damages clause. Nevertheless, the effect is essentially the same as if Underwood had elected to sue on the note—either alternative is tantamount to working a forfeiture of the earnest money.

The aforementioned partial validity of the summary judgment does not end the matter. This case must be remanded for trial on the defendant's affirmative defense of fraud and disloyalty and on her counterclaim for the damages caused by the allegedly actionable conduct of the

plaintiff in that respect. The record is replete with material questions of fact which are in dispute and are germane to the resolution of the affirmative defense and the disposition of the defendant's counterclaim. Some of these are hybrid questions of law and fact—but they still must be resolved after presentation of testimony before the trier of fact rather than by summary judgment. For example: What, if any, were the fiduciary responsibilities of the plaintiff to the defendant? Did the fiduciary relationship, if any, terminate upon the signing of the earnest money agreement? Did those fiduciary obligations, if any, include an affirmative duty of disclosure to the principal of oral repudiations made by the prospective buyer to the agent? If there was a breach of the alleged fiduciary relationship, what damages suffered by the defendant were caused thereby?

■ If, upon trial, the defendant is able to prove her allegations of disloyalty which are incorporated in both the affirmative defense and the counterclaim, the plaintiff broker could not avail itself of the provision apportioning the forfeited earnest money by virtue of the principles set out in Restatement, (Second) Agency § 469, and recently quoted and approved in *Rushing v. Stephanus,* 64 Wn.2d 607, 393 P.2d 281 (1964):

Disloyalty or Insubordination as Defense

An agent is entitled to *no compensation* for conduct which is disobedient or which is a breach of his duty of loyalty; if such conduct constitutes a wilful and deliberate breach of his contract of service, he is not entitled to compensation even for properly performed services for which no compensation is apportioned. (Italics ours.)

This case is remanded for trial on the defendant's affirmative defenses and counterclaim.

ROSELLINI, C. J., HILL, WEAVER, and HAMILTON, JJ., concur.