[No. 38270.   En Banc.   June 2, 1966.]

KING COUNTY, *Appellant*, v. THE CITY OF SEATTLE *et al.,*
*Respondents.**

*Charles O. Carroll, James E. Kennedy, William L. Paul,
Jr.,* and *Lewis A. Bell,* for ·appellant.

*A. L. Newbould, G. Grant Wilcox,* and *E. Neal King,* for
respondent City of Seattle.

*Marshall McCormick* and *Paul J. Nolan,* for respondent
City of Tacoma.

HUNTER, J.—This is an action in eminent domain com-
menced by King County (plaintiff-appellant) to ·condemn

*Reported in 414 P.2d 1016.

a 60-foot right-of-way of an existing road. Defendants, only two of whom are respondents on this appeal, were the cities of Seattle and Tacoma, St. Regis Paper Company, Northern Pacific Railway Company, and unknown claimants and owners. The city of Seattle interposed a motion for summary judgment, and the city of Tacoma moved to dismiss plaintiff's petition for lack of jurisdiction. The trial court granted both motions, holding in abeyance until termination of this appeal the determination of whether to dismiss the action as to the defendants St. Regis Paper Company and Northern Pacific Railway Company. King County appeals.

The proposed right-of-way, sometimes referred to as the "Lester Road," has already been the subject of much dispute. It begins near the western King County community of Kangley and proceeds southeasterly through Seattle's Cedar River Watershed, skirting the Howard A. Hanson Reservoir, and continuing through the center of Tacoma's Green River Watershed to the community of Lester. Other than infrequent and inconveniently timed railroad service, this road furnishes the sole means of ingress and egress for the town of Lester during several months of each year. The major portion of the existing road was built by the United States Forest Service in 1938, and is now designated Forest Service Road 212. That portion of the road which traverses the Cedar River Watershed is a Bonneville Power Company right-of-way to which King County has a permit of use.

We will treat the contentions of the parties as they pertain to the two orders separately. In granting Seattle's motion for summary judgment, the trial court based its order upon several grounds:

(1) That King County lacks specific statutory authority to condemn property owned by another municipal corporation;

(2) That the property sought to be condemned from The City of Seattle is property already devoted to a public use, namely a municipal watershed for the protection from pollution of the water supply of The City of Seattle, and that King County lacks specific statutory authority to condemn property already devoted to a public use;

(3) That the present public use is a higher and superior public use than the public use for which King County seeks said property; and

(4) That RCW 8.08.090 has no applicability to this action; . . . .

With regard to the granting of this motion, King County first assigns error on the basis that there is an issue of fact whether the road area which crosses the Cedar River Watershed is devoted to a public use. We need not determine whether such a factual issue exists, since the first ground for the trial court's order furnishes an adequate basis for its order regardless of the issue, if there be one, of public use.

It is King County's contention that it derives authority to condemn property owned by Seattle, which is not devoted to public use, under the general condemnation statutes authorizing counties to condemn land and property for public use within its boundaries. RCW 8.08.010 to RCW 8.08.080. Seattle argues that since these statutes do not delegate specific authority for a county to condemn lands or property belonging to another municipal corporation, King County is without power to do so.

An examination of our cases, as well as the text authorities, discloses that statutes which delegate the condemnation power of the state to its political subdivisions are strictly construed; that such power must be given in express terms or by necessary implication; that the power of eminent domain is one of the attributes of sovereignty; and that "[l]ands belonging to a State cannot be taken under a general grant of power made by the legislature." Lewis, Eminent Domain § 414, p. 746 (3d ed. 1909). Also, see Nichols, Eminent Domain § 3.213, p. 346 (Rev. 3d ed. 1964); *Seattle v. State*, 54 Wn.2nd 139, 143, 338 P.2d 126 (1959), and authorities cited; *State ex rel. Tacoma School Dist. No. 10 v. Stojack*, 53 Wn.2d 55, 330 P.2d 567, 71 A.L.R.2d 1064 (1958); *State ex rel. Attorney General v. Superior Court*, 36 Wash. 381, 78 Pac. 1011 (1904).

In the early case of *Seattle & Montana Ry. v. State*, 7 Wash. 150, 34 Pac. 551 (1893), we said:

Our eminent domain act, as applied to railroads (Gen. Stat., §§ 1569-70; Code Proc., title 9, chap. 5), must be construed, *as are all such acts,* as having regard only to the taking of private property, unless there is either express or clearly implied authority to extend them further. (Italics ours.)

This rule of construction was approved in *State ex rel. Trimble v. Superior Court,* 31 Wash. 445, 72 Pac. 89 (1903); *State ex rel. Attorney General v. Superior Court, supra.*

In *State ex rel. Cle Elum v. Kittitas Cy.,* 107 Wash. 326, 181 Pac. 698 (1919), we said:

the law does not give the county the right to take a city's property for county road purposes by implication; such right must, if it exist, be given expressly.

Consistent with this rule of construction of eminent domain statutes, we held in *Tacoma v. Taxpayers,* 49 Wn.2d 781, 307 P.2d 567 (1957), (reversed on other grounds, 357 U.S. 320, 2 L. Ed. 2d 1345, 78 Sup. Ct. 1209 (1958)), that even where a statute specifically delegates to a city the power to condemn state-owned land it applies only to state lands not devoted to public use. We there said:

After a careful review of RCW 8.12.030 and RCW 80.40.010, and other statutes to which our attention has been directed, we do not find that the legislature has expressly authorized a municipal corporation to condemn state-owned land previously dedicated to a public use; hence, we conclude that the city of Tacoma has not been endowed with the statutory capacity to condemn such lands.

It is significant to note that subsequent to *State ex rel. Attorney General v. Superior Court, supra,* that the then existing general statute, Laws of 1905, ch. 55, § 1, p. 84 (now codified as RCW 8.12.030), authorizing the exercise of the power of eminent domain by cities, was amended by Laws of 1907, ch. 153, § 1, p. 316, which expressly delegated the additional power to cities to condemn state, county and school lands.

■ Nowhere in RCW 8.08.010 is there an express or necessarily implied legislative authority for counties to

condemn the property or rights of the state or any of its subdivisions.

Accordingly, we hold that in the absence of express or necessarily implied legislative authorization, which is not included in RCW 8.08.010, counties do not have the power to acquire by condemnation property owned by the state or a subdivision thereof, regardless of the use to which that property is being put.

King County further contends that it has the power to condemn property of Seattle under the facts of the instant case by authority of the special statute, RCW 8.08.090, which provides:

> Every county in this state is hereby, for the purposes of RCW 8.08.090 through 8.08.130, declared to be a body corporate and is authorized and empowered by and through its board of county commissioners whenever said board shall judge it to be clearly for the general welfare and benefit of the people of the county, and so far as shall be in harmony with the Constitution of this state and the provisions of RCW 8.08.090 through 8.08.130, to condemn and appropriate as hereinafter in RCW 8.08.090 through 8.08.130 provided and to dispose of for public use such lands, properties, rights and interests as are hereinafter in RCW 8.08.090 through 8.08.130 mentioned, whenever the government of the United States or of this state is intending or proposing the construction, operation or maintenance of any public work situated or to be situated wholly or partly within such county, or the expenditure of money or labor for the construction, operation or maintenance of any such work, and such condemnation or appropriation will enable the county to aid, promote, facilitate or prepare for any such construction, operation, maintenance or expenditure by either or both such governments, or to fulfill or dispose of any condition upon which such construction, operation, maintenance or expenditure is by law or from any cause contingent, and no property shall be exempt from such condemnation, appropriation or disposition by reason of the same having been or being dedicated, appropriated or otherwise reduced or held to public use.

Respondents argue that this statute does not authorize condemnation of the property of a municipality, for the reason that it was passed for the sole purpose of enabling

King County to aid in the construction of the Lake Washington Ship Canal. Assuming that the statute is not so limited, which question we do not decide, the statute cannot apply under the facts of the instant case, as the record does not show that this eminent domain action was brought to aid in a definitive governmental undertaking to build or operate a public work.

King County argues to the contrary that the condemnation action was taken in aid of the May, 1963 Special Area Multiple Use Plan for the Green River Watershed (exhibit 1), as proposed by the United States Forest Service. While neither the authorizing resolution (King County Resolution No. 28937) nor the petition filed by King County to begin this action stated that it was in aid of a federal project, a later resolution (King County Resolution No. 29639) did state that this was the purpose of this action.

Even if we consider King County's action to have been amended by the later resolution, nevertheless, the county cannot bring the action within the ambit of RCW 8.08.090, *supra,* merely by legislatively declaring the fact. The record discloses that the United States Forest Service owns the right-of-way easement for most of the proposed right-of-way. King County now uses this road under revocable special use permits issued to it by the Forest Service. Its status as a licensee-user of the road at the sufferance of the Forest Service is consistent with a use for the benefit of King County, the licensee, and inconsistent with its claim that the present action is in aid of a federal project. Nowhere in the record is there a request by the Forest Service that King County aid it by this action in condemnation. Moreover, the Multiple Use Plan appears to be nothing more than a proposed managerial policy of the Forest Service. The record lacks any evidence of a definitive undertaking by that agency of a public work. In short, the only evidence in the record which supports King County's assertion that this action was brought to aid a federal public works project, is appellant's prior assertion, by resolution, to the same effect. We must therefore hold that under the present record RCW 8.08.090, *supra,* is inapplicable to this

proceeding. The trial court's order granting summary judgment for the city of Seattle is affirmed.

With regard to the trial court's order granting the city of Tacoma's motion to dismiss, appellant makes three assignments of error. Two of these assignments are identical to the two just discussed, and their disposition thereof applies to King County's action against Tacoma. King County's third assignment of error is that the order is erroneous "because the evidence is that Tacoma has no right, title or interest in Forest Service Road 212 or the proposed road." King County contends that while the city of Tacoma owns the underlying fee along portions of the proposed right-of-way, the title is subject to easements of record for the road right-of-way, with the exception of 900 feet thereof, and two relocated or newly-constructed sections of the roadway; that the Forest Service has acquired the right-of-way easement in the latter sections by condemnation; that the former 900-foot section is a public road by prescriptive right; and that the question of adverse use is a question of fact which should have been tried by the trial court.

This action in eminent domain is not a proper action in which to determine the extent of Tacoma's interest, if any, in the lands sought to be condemned. We have determined that King County cannot in this action acquire *any* interest of Tacoma, no matter how extensive or how minor. The record discloses, and King County argues, that if the interests sought to be condemned, to which Tacoma claims an interest, are not owned by Tacoma, then they are owned by the United States government or by King County in trust for the public. None of these three possible classifications of ownership rights are subject to condemnation by King County. The city of Tacoma's motion to dismiss for lack of jurisdiction was properly granted.

The judgment of the trial court is affirmed.

ROSELLINI, C. J., HILL, DONWORTH, FINLEY, WEAVER, HAMILTON, and HALE, JJ., concur.

OTT, J. (dissenting)—This is an eminent domain proceeding instituted by King County to condemn real property for

roadway purposes. The petition alleged that the United States, through its agencies, has conveyed or is about to convey to the county its interest in the proposed right of way; that the Northern Pacific Railway Company and the cities of Seattle and Tacoma claim to own some interest in a portion of the proposed roadway, and that the real estate for a roadway is necessary for public use.

The majority hold that the controverted factual issues raised by the pleadings, affidavits, and exhibits can be resolved by summary judgment. I do not agree.

The record before us establishes that the roadway sought to be condemned by King County is approximately 30 miles long and has been used as such continuously since 1938. It is the only means of access to Lester, a small community in King County. It was constructed in 1938 by the United States Forest Service *on land which it owned or acquired.* Small segments of the road were constructed by the United States Forest Service where no right-of-way deeds had been acquired, but the use by the forest service and the public over such lands has been open, adverse, notorious, and continuous for a period of time sufficient to acquire a prescriptive use right thereto.

The deeds to the city of Tacoma from its predecessors were subject to the United States Forest Service easement or prescriptive rights acquired by the public use before Tacoma's acquisition thereof.

The city of Tacoma's claim to any interest in the right of way is disputed.

The city of Seattle asserts that the right of way sought to be condemned traverses its city watershed.

It is disputed (1) whether the proposed roadway is in the city of Seattle's watershed, and (2) whether the drainage from the roadway is toward the city's water supply.

The majority hold:

> The record discloses . . . that if the interests sought to be condemned, to which Tacoma claims an interest, are not owned by Tacoma, then they are owned by the United States government or by King County in trust for the public.

The majority conclude that the United States government's interest cannot be acquired by King County by condemnation.

King County is not attempting to condemn lands belonging to the United States. It is contended by King County that the United States government has conveyed or is about to convey voluntarily its interest in the proposed right of way to King County. The disputed issue of fact is whether either the city of Tacoma or the city of Seattle has any right, title or interest in the proposed roadway. The material facts of ownership of the roadway in question or the right to the use of it are vigorously contested.

In order to sustain the summary judgment, the majority assume that ownership of the roadway or the right to control the use of it is vested in the cities of Tacoma and Seattle. The ownership of the roadway here in question and the right to the public use of it are genuine issues of material fact which cannot be assumed or resolved by summary judgment. *Guy Stickney, Inc. v. Underwood*, 67 Wn.2d 824, 410 P.2d 7 (1966); *Reed v. Streib*, 65 Wn.2d 700, 399 P.2d 338 (1965); *Slemmons v. Shotwell*, 64 Wn.2d 595, 392 P.2d 1007 (1964); *Foote v. Hayes*, 64 Wn.2d 277, 391 P.2d 551 (1964).

In my opinion, the judgment should be reversed, and the factual issues determined by a trial on the merits.