TOWN OF PARKER, a Colorado home rule municipal corporation; and The Parker Water and Sanitation District, a Colorado special district, Petitioners–Appellants,

v.

The COLORADO DIVISION OF PARKS AND OUTDOOR RECREATION; and The Colorado Department of Natural Resources, Respondents–Appellees.

No. 92CA0494.

Colorado Court of Appeals,
Div. II.

March 11, 1993.

Rehearing Denied April 8, 1993.

Certiorari Denied Nov. 1, 1993.

**586**

Hayes, Phillips & Maloney, P.C., John E. Hayes, James S. Maloney, Faegre & Benson, Joseph M. Montano, Leslie A. Fields, Denver, Krassa, Lindholm, Kumli & Madsen, Robert F.T. Krassa, Karl F. Kumli, III, Boulder, for petitioners-appellants.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Thomas W. Gibb, Sr. Asst. Atty. Gen., Cliff Seigneur, Peter A. Fahmy, Asst. Attys. Gen., Denver, for respondents-appellees.

Opinion by Judge HUME.

Petitioners, Town of Parker (Parker) and The Parker Water and Sanitation District (District), appeal the trial court's dismissal of their petition to condemn certain property owned by the respondents, The Colorado Division of Parks and Outdoor Recreation and The Colorado Department of Natural Resources. We affirm.

The petitioners filed their petition in condemnation requesting temporary possession of state lands to conduct test hole borings to determine the feasibility of a recreation and water storage project on those lands. The respondents filed a motion to dismiss claiming that the petitioners did not have the authority to condemn state-owned lands. After a hearing and presentation of briefs, the trial court granted the motion and dismissed the petition.

The trial court found that the power of eminent domain granted to Parker by Colo. Const. art. XX, §§ 1 and 6, and to the district by § 32–1–1006, C.R.S. (1992 Cum. Supp.) did not confer the power of eminent domain over lands owned by the state. The court also ruled that § 38–3–101, C.R.S. (1982 Repl.Vol. 16A) was not a grant of authority to condemn state-owned lands, but was the statutory procedure to be followed by corporations which were otherwise authorized to appropriate state lands for public use.

## I.

On appeal, petitioners contend that they have the power, through eminent domain, to condemn state-owned lands. They argue that the power to condemn state lands is granted to them either by the constitution or by statute. We find no such authority.

The power of condemnation has been restrained by constitutional limitations for the protection of individual property rights and it lies dormant in the state until the General Assembly speaks. *Beth Medrosh Hagodol v. City of Aurora,* 126 Colo. 267, 248 P.2d 732 (1952). The authority to condemn may be conferred expressly by statute or by necessary implication from the rights, powers, and duties conferred by the General Assembly. *Board of County Commissioners v. Intermountain Rural Electric Ass'n,* 655 P.2d 831 (Colo.1982).

Public property or land in the public domain is not subject to condemnation or appropriation in the absence of a statute authorizing it. The right to take property already dedicated to a public use for another public use exists in some cases, but such right must be by specific grant of authority. Thus, a municipal corporation or a public corporation does not have the power to condemn state-owned lands dedicated to a public use, unless that power is clearly and expressly conferred on it by statute. *See Beth Medrosh Hagodol v. City of Aurora, supra.*

And, most importantly, narrow construction is the rule in determining the scope of the condemnation power delegated. *Department of Highways v. Denver &*

*Rio Grande Western R.R. Co.,* 789 P.2d 1088 (Colo.1990).

### A.

■ Parker asserts that Colo. Const. art. XX, § 6, authorizes a home rule municipality to condemn state-owned lands. We disagree.

Colo. Const. art. XX, § 1, which is applicable to home rule municipalities organized under Colo. Const. art. XX, § 6, provides, in pertinent part, that home rule municipalities:

> shall have the power, within and without [their] territorial limits, to ... condemn and purchase ... [and] may enforce such purchase by proceedings at law as in taking land for public use by right of eminent domain....

■ This general grant of eminent domain power confers no specific condemnation powers over state-owned lands. State lands cannot be taken by a general grant of power. *King County v. City of Seattle,* 68 Wash.2d 688, 414 P.2d 1016 (1966). Power to condemn state-owned lands must be granted expressly or by necessary implication.

Further, to adopt Parker's construction of this section would create an absurd result. If any home rule municipality could condemn state-owned lands deemed necessary for its municipal purposes, the sovereign state's purpose would be subject to random subversion.

Moreover, we cannot say that, in adopting the constitutional provision at issue, the People could have intended that a home rule municipality's power of eminent domain be superior to that of the state. *See People ex rel. Stokes v. Newton,* 106 Colo. 61, 101 P.2d 21 (1940) (In adopting Article XX, the People did not intend to surrender or relinquish any portion of the state's police power to declare the public policy of the state.). Hence, we conclude that a home rule municipality does not have the power to condemn state-owned lands.

### B.

■ Relying on the provisions of § 32–1–1006(1)(f), C.R.S. (1992 Cum.Supp.), the District argues that it has been granted the power to condemn state lands. We again disagree.

Section 32–1–1006(1)(f) provides:

> To have and exercise the power of eminent domain and dominant eminent domain and, in the manner provided by article 1 of Title 38, C.R.S., to take any property necessary to the exercise of the powers granted, both within and without the special district, except for the acquisition of water rights;

■ Our primary task in construing a statute is to ascertain and give effect to the intent of the General Assembly. *Charnes v. Boom,* 766 P.2d 665 (Colo.1988). To discern legislative intent, a court should look first to the statutory language. *People v. Warner,* 801 P.2d 1187 (Colo.1990).

■ Statutory words and phrases should be given effect according to their plain and ordinary meaning. *People v. District Court,* 713 P.2d 918 (Colo.1986). Further, it is presumed that the General Assembly has knowledge of the legal import of the words it uses. *People v. Guenther,* 740 P.2d 971 (Colo.1987).

This statute does not establish a specific grant of authority to the District to condemn state lands. Had the General Assembly intended to grant a special district the power to condemn state lands, it would have employed statutory terminology which clearly expressed such intent, as it has done under other circumstances. *See* §§ 29–4–105 and 29–4–211, C.R.S. (1986 Repl.Vol. 12A) (governmental subdivisions of the state may condemn state lands provided the state has given its consent).

■ The District argues, however, that because it was granted the power of dominant eminent domain, the General Assembly intended that it should have the power of eminent domain over state lands. We do not agree.

The term "dominant eminent domain" is not defined in the statutory provisions gen-

erally applicable to special districts. However, it is defined in the Regional Transportation District Act at § 32–9–103(6), C.R.S., as meaning that the right of the Regional Transportation District to condemn public property is superior to that of any city, town, city and county, county, or other public corporation, except a school district. Hence, under that definition, the term "dominant eminent domain" means that the power of eminent domain is superior to that of other specific governmental subdivisions of the state, but not the state itself.

Without a contrary definition appearing in the special district provisions, we must assume that the General Assembly intended that the term "dominant eminent domain" in § 32–1–1006(1)(f) has a similar meaning.

Thus, we conclude that neither the constitution nor the statute specifically grants to the petitioners the authority to condemn state lands.

## II.

■ Alternatively, petitioners contend that § 38–3–101, et seq., C.R.S. (1982 Repl. Vol. 16A) provides, by express grant or necessary implication, the authority of a home rule municipality and a special district to acquire through eminent domain state-owned lands. They argue that § 38–3–101 grants such authority to corporations that have the power of eminent domain and further provides statutory procedures to be followed when implementing that power.

On the other hand, respondents claim that § 38–3–101 merely establishes the procedure to be followed by corporations otherwise authorized to condemn state-owned lands. We agree with the respondents.

Section 38–3–101 provides, in pertinent part:

*Whenever any corporation authorized* to appropriate for a public use by the exercise of the right of eminent domain lands, ... requires, needs, or desires to appropriate lands, ... which belong to the United States, the state of Colorado, or any other state or sovereignty, such corporation, for the purpose of having

such lands, ... appropriated to such use and for determining the compensation to be paid to such owner therefor, may present a petition to the district court in each of the counties in which such lands, ... are located.... (emphasis added)

Here, the statute may be read as either the petitioners or respondents suggest. However, we are obligated to construe the statute narrowly and against the person asserting the power to condemn. *Coquina Oil Corp. v. Harry Kourlis Ranch,* 643 P.2d 519 (Colo.1982).

The language of the statute does not expressly confer the power to condemn state lands based solely on a general grant of power of eminent domain. Had the General Assembly intended to confer the power of eminent domain in this statute, it could have employed statutory terminology which clearly expressed that intent as it has done under other circumstances. *See* § 32–4–406(1)(j), C.R.S. ("To have and exercise the power of eminent domain...."); § 37–45–118(1)(c), C.R.S. (1990 Repl.Vol. 15) ("To have and to exercise the power of eminent domain...."); § 37–47–107(1)(i), C.R.S. (1990 Repl.Vol. 15) ("To exercise the power of eminent domain...."); § 37–95–106(1)(n), C.R.S. (1990 Repl.Vol. 15) ("To have and exercise the power of eminent domain...."); and § 41–3–106(1)(j), C.R.S. (1984 Repl.Vol. 17) ("To have and exercise the power of eminent domain....").

In comparison, the language of § 38–3–101 does not clearly and expressly grant the power of eminent domain over state-owned lands. Therefore, narrowly construing the statute leads us to conclude that the corporation must otherwise be "authorized" to condemn state lands.

Moreover, to adopt the interpretation urged by the petitioners would mean that any corporation granted the power of eminent domain could condemn state lands. Such a result would impose an undue burden on the state's resources and lands. We perceive no indication that the General Assembly intended such a result. *See* § 2–4–201(1)(c), C.R.S. (1980 Repl.Vol. 1B) (it must

be presumed that the General Assembly intended a just and reasonable result).

Hence, by the language used, we cannot discern a legislative intent to grant the power to condemn state-owned lands to any corporation which has been granted the power of eminent domain.

■ Petitioners argue, however, that § 38–3–101 would be rendered meaningless if construed as merely procedural because of the dearth of statutory enactments authorizing any agency to condemn federal or state lands. Therefore, they argue that § 38–3–101 grants the power of eminent domain over state lands by necessary implication.

Contrary to petitioners' argument, the lack of specific authority to condemn state lands does not, by itself, indicate that § 38–3–101 is superfluous. Rather, it indicates that the General Assembly intended that the power to condemn state lands be used sparingly and only by specific governmental subdivisions for specific purposes.

There are five statutory provisions which grant governmental subdivisions of the state the power to condemn state lands either expressly or by necessary implication. *See* § 32–9–161(1)(b), C.R.S. (Regional Transportation District's power of eminent domain includes the power to condemn any property necessary to carry out any of the specific statutory purposes, even if such property is already devoted to the same use by any person or public body, except the federal government unless the federal government consents to such condemnation); § 32–11–104(10)(a), C.R.S. (1992 Cum.Supp.) (Urban Drainage and Flood Control District may take any property necessary to carry out any of the District's objects or purposes, whether such property is already devoted to the same use by any person or entity other than the federal government in the absence of its consent to any such taking); § 36–4–108, C.R.S. (1990 Repl.Vol. 15) (State Board of Land Commissioners can invoke the

state's power of eminent domain to acquire federal lands), and §§ 29–4–105 and 29–4–211, C.R.S. (1986 Repl.Vol. 12A) (governmental housing authorities may condemn state lands provided the state has given its consent).

Consequently, we conclude that because there are statutes authorizing corporations to condemn federal and state lands, an interpretation of § 38–3–101 as a procedural statute would not render it meaningless. Thus, § 38–3–101 does not grant any authority to condemn state lands. It merely establishes the procedure to be followed by a corporation which otherwise has been authorized to condemn state lands.

### III.

Because we conclude that the petitioners do not have the power to condemn state-owned lands, they are not entitled to an evidentiary hearing. *See Beth Medrosh Hagodol v. City of Aurora, supra.*

Accordingly, the judgment of dismissal is affirmed.

TURSI and SMITH,* JJ., concur.