[No. 33108. Department Two. April 21, 1955.]

MIRIAM TEPLEY, *Respondent,* v. WILLIAM E. SUMERLIN *et al., Appellants.*[1]

[1]Reported in 282 P. (2d) 827.

*Melvin T. Swanson,* for appellants.

*Walthew, Oseran & Warner,* for respondent.

ROSELLINI, J.—On August 10, 1950, appellants entered into a contract to purchase a residence from respondent. The purchase price was eight thousand nine hundred fifty dollars, of which one thousand dollars was paid down, and the balance was payable sixty-five dollars, or more, a month on the tenth of each month, including interest at six per cent.

The real-estate contract contained the following provision:

"The purchaser agrees to assume all risk of damage to any improvements upon the premises, or of the taking of any part of the property for public use; that no such damage or taking shall constitute a failure of consideration, but in case of such damage or taking, all moneys received by the seller by reason thereof shall be applied as a payment on account of the purchase price of the property, less any sums of money which the seller may be required to expend in procuring such money, or at the election of the seller, to the rebuilding or restoration of such improvements."

Time was made the essence of the contract, which contained a clause giving the seller the right to forfeit in the event of default.

The payments were made through November, 1951. During that month, a construction company, under contract with the city of Seattle, excavated a ditch for a trunk sewer in the road in front of the residence. Appellants and respondent agree that this excavation caused the house to settle to the extent that its market value was completely destroyed, although there has been no judicial determination of the extent of the damage.

Appellants began an action against the contractor and the city to recover the value of the property and endeavored to induce respondent to join in the suit. Instead, respondent gave notice of intention to declare a forfeiture by reason of

appellants' failure to make any payment after November, 1951, a period of more than one year. The notice was followed by a declaration of forfeiture and the institution of this action, filed March 24, 1953. At the same time, respondent brought a suit against the city to recover the full value of the property in question, claiming to be the sole owner thereof.

At the trial of this action, the parties stipulated that the respondent was entitled to have title quieted in her unless the destruction of the property, as a result of the excavation, suspended the duty to make payment on the contract until determination of appellants' damage suit against the contractor and the city, in which respondent has been joined as a party defendant.

The trial court concluded that, under the terms of the contract, appellants were obligated to continue their monthly payments on the contract regardless of the damage to, or destruction of, the property covered by it. Inasmuch as the delinquency had continued for more than a year, proper notice had been given and a forfeiture declared, and no valid excuse for default had been presented, the respondent was entitled to a decree quieting title in her and divesting appellants of all rights in and to the premises. Appellants were given thirty days in which to make good the default and reinstate the contract. The court's oral decision was rendered February 11, 1954. On July 8, 1954, no payments having been made, the court entered its final decree quieting title in the respondent.

As we understand appellants' argument, they contend that, inasmuch as the removing of lateral support by the city, through its agent, was a taking or damaging of private property for public use, the cause of action which thereupon matured was equivalent in law to a condemnation award. They further contend that this as yet undetermined "award" replaced the property, terminated all rights and obligations under the contract, and remitted the parties to their remedy against the tort-feasor.

Appellants cite no authority in support of this prop-

osition. *In re Twelfth Avenue South,* 74 Wash. 132, 132 Pac. 868, on which they rely, deals with the proper disposition of a condemnation award. Here no condemnation proceeding was undertaken by the city or its contractor. A municipal corporation such as the city of Seattle has no inherent power of eminent domain and can exercise the power only when expressly authorized by the legislature. Since the right is delegated, in its exercise the statutory ·procedure must be followed. See *State ex rel. Mower v. Superior Court,* 43 Wn. (2d) 123, 260 P. (2d) 355; and 18 Am. Jur. 652, Eminent Domain, § 27. Whether the pendency of an eminent domain proceeding would suspend the vendee's obligations under a contract such as we have here, is a question we are not called upon to decide on this appeal.

Appellants cite a number of cases dealing with liability for removal of lateral support, presumably to show that a cause of action exists against the city. Unless the accrual of such a cause of action affects the appellants' duty under their contract, these cases can have no bearing on our decision here.

As this is an action to forfeit a contract and to quiet title in the vendor, the law of contracts must govern. If the agreement is unambiguous and not contrary to public policy, the courts must enforce it as written. (See *Tube-Art Display v. Berg,* 37 Wn. (2d) 1, 221 P. (2d) 510.)

Appellants do not contend that there is anything ambiguous or contrary to public policy in their promise to pay the full purchase price at the rate of sixty-five dollars per month and to assume the risk of loss from damage to or taking of the property. The contract gives the vendor the right to forfeit if "the purchaser shall fail to comply with or perform any condition or agreement hereof promptly at the time and in the manner herein required." We have held that the intention of the parties to a contract, where clearly expressed in the instrument, must govern. *Thomle v. Soundview Pulp Co.,* 181 Wash. 1, 42 P. (2d) 19.

In an executory land contract, the risk of loss must fall upon either the vendor or the vendee. If it falls upon

the vendor, he must return any payments made; if the vendee assumes the risk, his obligations under the contract are unimpaired. Here the vendee expressly assumed the risk of loss. If this does not mean that his contract obligation should continue despite damage to the improvements or the taking of the property by eminent domain, it means nothing. While the vendor here is under an obligation to credit against the price any money received as the result of such damage or taking, he is entitled to deduct whatever expenses he incurs in obtaining such compensation. There is no express undertaking on his part to seek recovery. There is nothing in this agreement to indicate that payments on the purchase price should be suspended on the happening of an event which might, or might not, entitle the vendor to compensation, only a part of which he would be required to credit against the contract price.

Appellants had been in default many months before the notice of intention to declare a forfeiture was given. Having offered no legal excuse for their failure to keep up the payments, and having failed to make good the default within the thirty-day period allowed by the court, the decree was properly entered.

The judgment is affirmed, with costs to the respondent.

HAMLEY, C. J., MALLERY, HILL, and WEAVER, JJ., concur.