[No. 34562. Department Two. October 17, 1958.]

THE STATE OF WASHINGTON, *on the Relation of Tacoma School District No. 10, Petitioner and Relator*, v. FRANK STOJACK *et al., Defendants*, BARTLETT RUMMEL, *Judge of the Superior Court of Pierce County, Respondent.*[1]

[1]Reported in 330 P. (2d) 567.

*Leo Teats*, for relator.

*Burkey, Burkey & Marsico*, for defendants.

WEAVER, J.—By writ of certiorari, Tacoma School District No. 10 presents for review an order of the trial court refusing to enter a decree of public use and necessity that would have permitted the school district to condemn defendant's property. The order dismissed the school district's condemnation action.

Prior to the commencement of this action, the school district had acquired approximately seventy-three contiguous acres of land, by other means than condemnation, for the purpose of erecting a new high school in South Tacoma. The district desired to condemn approximately three acres of land, lying in the "extreme northeasterly portion of the proposed site for said new South Tacoma high school," owned by Frank Stojack.

The trial court concluded:

"II. That pursuant to the laws of the State of Washington and, in particular, Chapter 155 of the Session Laws of the State of Washington, Regular Session 1957 [quoted *infra*], it was the intent of the Legislature *to limit the size of sites for senior high school purposes to 40 acres.* (Italics ours.)

"III. That Tacoma School District No. 10, Pierce County, Washington, having already acquired approximately 73 acres of the proposed new South Tacoma senior high school site, is not entitled to condemn the property of the defendants, Stojack et ux., . . ."

The statute (RCW (Sup. 1957) 28.58.070), to which the trial court refers in the above-quoted conclusion of law, reads as follows:

"The board of directors of any school district of this state may proceed to condemn and appropriate not more than fifteen acres of land for any elementary school purpose, not more than twenty-five acres for any junior high school purpose and not more than forty acres for any senior high school purpose. Such condemnation proceedings shall be in accordance with the laws of this state providing for appropriating private property for public use." Laws of 1957, chapter 155, § 1, p. 573.

A. HISTORY OF POWER OF SCHOOL DISTRICTS TO PURCHASE PROPERTY.

The first legislature established a general uniform system of common schools in the state. Hill's Code, §§ 769-1017; Laws of 1889, chapter XII, p. 348, *et seq.* Under the original statute, real property could be acquired by action of the district in two ways. First, whenever an incorporated city had a population of ten thousand or more inhabitants, it constituted a "school district," which became

". . . a body corporate and possess[ed] all the usual powers of a corporation for public purposes, and in that name and style may sue and be sued, *purchase*, hold and sell such personal and *real estate*, and enter into such obligations as are authorized by law; . . ." (Italics ours.) Laws of 1889, chapter XII, § 1, p. 386; Hill's Code, § 857.

In the event the purchase of school sites and the erection of buildings called for an expenditure exceeding twenty-five thousand dollars for any one calendar year, the question had to be submitted to a vote of the electors of the district. Hill's Code, § 886; Laws of 1889, chapter XII, § 30, p. 394.

Second, if the school district was not in an incorporated city having a population of ten thousand or more inhabitants, the board of directors of the district had the power and duty to

". . . *purchase* or sell lots or other real estate, when directed by a vote of the district so to do; . . ." Hill's Code, § 791. Laws of 1889, chapter XII, § 26, p. 365.

The statute did not restrict the acreage a school district might purchase for a school site nor grant the right of eminent domain.

In 1895, school districts were given the right to purchase

a school house site or sites of not less than one acre nor more than five acres each, of any *school lands* belonging to the state of Washington. Bal. Code, § 2278; Laws of 1895, chapter XII, § 1, p. 17. This, however, was only a limitation upon the purchase of a certain *type* of land. (The present statute (RCW 28.58.060; Laws of 1909, chapter 97, § 4, p. 265), limits a district's right to purchase *school lands* belonging to the state of Washington to "not less than three acres nor more than ten acres each. . . .")

In 1897, the legislature repealed the statutes to which we have just alluded (Laws of 1897, chapter CXVIII, § 257, p. 448) and adopted a ninety-three page code of public instruction which, for the purposes of the instant case, reenacted, in general, the cited portions of the 1889 and 1895 statutes we have discussed. Laws of 1897, chapter CXVIII, §§ 7, 8, 40, 75, 97; Bal. Code, §§ 2278, 2279, 2311, 2345, and 2367.

In 1899, the legislature amended Laws of 1897, chapter CXVIII, § 97, p. 393 (substantially the same as Laws of 1889, chapter XII, § 30, p. 394; Hill's Code, § 886). The amendment required the approval of the electors of a district in incorporated cities having a population of more than ten thousand inhabitants, if the annual expenditure for the purchase of school sites exceeded $50,000. This raised the amount from $25,000 to $50,000. Laws of 1899, chapter CXLII, § 14, p. 319; Bal. Code, § 2367. The amendment also contained a proviso which we will discuss under the history of the power of a school district to acquire property by eminent domain.

In 1909, the legislature adopted a one hundred and forty-six page "School Code" (Laws of 1909, chapter 97, p. 230 *et seq.*) which was

". . . amendatory of, and a recodification as amended of, all laws relating to the public school system of the state of Washington." (p. 376)

The 1909 act provided:

"A school district shall constitute a body corporate and shall possess all the usual powers of a corporation for public

purposes, and in that name and style may sue and be sued, *purchase*, hold and sell such personal and *real estate*, and enter into such obligations as are authorized by law; . . ." (Italics ours.) Laws of 1909, chapter 97, § 2, p. 265.

This section, which is substantially the same as Laws of 1889, chapter XII, p. 386, was re-enacted by Laws of 1947, chapter 266, § 6, p. 1107; Rem. Supp. 1947, § 4693-25, and now appears as RCW 28.58.010.

Nowhere in the history of the present statute (RCW 28.58.010) do we find an acreage limitation upon the power of a school district to purchase land, except *school land* belonging to the state of Washington.

B. History of Power of School District to Acquire Property by Eminent Domain.

■ A municipal corporation does not have an inherent power of eminent domain. It may exercise such power only when it is expressly authorized to do so by the state legislature. *Tepley v. Sumerlin,* 46 Wn. (2d) 504, 507, 282 P. (2d) 827 (1955), and cases cited.

■ Of course, by statute, the state may delegate the power of eminent domain to one of its political subdivisions, but such statutes are strictly construed. 1 Lewis, Eminent Domain (3d ed.) 679, § 371, cited with approval in *State ex rel. Chesterley v. Superior Court,* 19 Wn. (2d) 791, 800, 144 P. (2d) 916 (1944).

In 1897, the legislature provided that

"The board of directors shall annually . . . report to the board of county commissioners an estimate of the amount of funds . . . *for the purchase of school sites,* . . . *Provided,* That in case the purchase of school sites and the erection of buildings shall require an expenditure exceeding twenty-five thousand dollars ($25,000) for any one calendar year, the question shall be submitted to a vote of the electors of the district, . . ." (Italics ours.) Laws of 1897, chapter CXVIII, § 97, p. 393.

This section only applied to school districts in incorporated cities having a population of ten thousand or more. See Laws of 1897, chapter CXVIII, § 75, p. 386.

The first delegation of the power of eminent domain to a school district and the first mention of acreage appear in Laws of 1899, chapter CXLII, § 14, p. 319. It was an amendment to Laws of 1897, chapter CXVIII, § 97, p. 393 (quoted *supra*), and applied only to districts in incorporated cities having ten thousand or more inhabitants. In addition to raising the amount requiring a vote from $25,000 to $50,000 for school sites and buildings, it provided:

"That the board of directors of any school district of this state may proceed to *condemn and appropriate* sufficient land for a school house site *not to exceed one acre in extent;* such condemnation proceedings shall be in accordance with the laws of this state providing for appropriating private property for public use." (Italics ours.) Laws of 1899, chapter CXLII, § 14, p. 319.

This could not mean that school districts in incorporated cities having a population of ten thousand or more were limited to acquire *only one acre* of land for a school site: First, because the school districts then had the power to *purchase* land, unrestricted by any acreage limitation (Hill's Code § 857; Bal. Code § 2345); and, second, school districts then had the power to *purchase* not less than one acre nor more than *five acres* of any school lands belonging to the state of Washington. Bal. Code § 2278; Laws of 1895, chapter XII, § 1, p. 17.

Laws of 1903, chapter 111, § 1, p. 193, provided:

"Whenever any school district shall select any real estate as a site for a school house, or as additional grounds to an existing school house site, within the district, and the board of school directors of such district and the owner or owners of the site or any part thereof, or addition thereto so selected, shall be unable to agree upon the compensation to be paid by such school district to the owner or owners thereof, such school district shall have the right to take and acquire title to such real estate for use as a school house site or additional site, upon first paying to the owner or owners thereof therefor the value thereof, to be ascertained in the manner hereinafter provided."

This act, which provided the procedure to be followed, contained no limitation of acreage in an eminent domain

proceeding by a school district, and none existed, except as there appeared to have been a condemnation acreage limitation on districts in incorporated cities, as pointed out heretofore.

In 1909, the legislature adopted a one hundred and forty-six page "School Code" (Laws of 1909, chapter 97, page 230 *et seq.*)

The quoted language of the 1903 act, *supra*, was re-enacted in 1909 (Laws of 1909, chapter 97, subchapter 20, § 1, p. 372) and now appears as RCW 8.16.010. However, the 1909 school code placed an acreage limitation on school *condemnation* proceedings. It provided

"The board of directors of any school district of this state may proceed to condemn and appropriate sufficient land for a school house site not to exceed five acres in extent; . . ." Laws of 1909, chapter 97, § 13, p. 289.

In 1949, the condemnation acreage limitation was raised to fifteen acres. Laws of 1949, chapter 54, § 1, p. 133; Rem. Supp. 1949, § 4788. In 1957, the acreage limitation in condemnation proceedings by school districts was raised to forty acres for senior high schools; less for other schools. RCW (Sup. 1957) 28.58.070; Laws of 1957, chapter 155, § 1, p. 573. The words "condemn and appropriate," as used in the existing statute, are peculiarly significant in an action of eminent domain. They have no application to the process of acquisition by purchase.

Two facts are apparent from this survey of the history of the present statutes: First, the power of school districts to acquire land by purchase, free of any acreage limitation, came into existence prior to the right of acquisition by eminent domain; and, second, the right of school districts to acquire property by eminent domain (which at first had no acreage limitation) was established as an independent, additional method of acquiring property. The power of condemnation was not an amendment to the statutory power of a district to purchase property, nor is it a limitation thereof, in the absence of an expressed intent of the legislature.

The trial court erred when it concluded that the school district was not entitled to condemn defendant's property because the district already owned seventy-three acres of land.

*Wayne County Board of Education v. Lewis*, 231 N. C. 661, 58 S. E. (2d) 725 (1950) and *Schaefer v. School Dist. No. 18*, 111 Colo. 340, 141 P. (2d) 903 (1943), upon which defendant relies, are not apposite. The *Wayne County* case is distinguished by its facts. Two contiguous school sites were involved. The district was permitted to acquire one by condemnation, since the acreage did not exceed the statutory limitation, and ". . . the mere fact that they adjoin is incidental."

The *Schaefer* case, *supra*, may be interpreted as contrary to the conclusion we have reached; however, a comparison of the Washington statutes and their history, as we have outlined it, with the Colorado statutes leads us to the conclusion that the reasoning of the *Schaefer* case is not controlling in the instant case.

We examine next the trial court's conclusion

". . . that the amount of land desired by said School District for said schoolhouse site is not required or necessary for a senior high school to accommodate from 600 to 1,500 students, nor is it the prerogative or primary right of the School District to provide recreational facilities for the surrounding communities."

June 13, 1957, the board of directors of Tacoma School District No. 10 adopted resolution No. 175, which provided

"That public necessity and convenience require the acquisition of the within described property for public use [which included the description of defendant's property], to-wit: for grounds and schoolhouse sites situate within the Tacoma School District No. 10, and that the acquisition thereof is required and necessary for said purpose."

█ Public education is a public use for which private property may be appropriated under the power of eminent domain. If an attempt is made to take more property than is reasonably necessary to accomplish the purpose, then the

taking of excess property is no longer a public use, and a certificate of public use and necessity must be denied.

█ In the selection of a site, the board of directors had the authority to determine the area of land reasonably necessary to accommodate suitable buildings, play grounds (*Sorenson v. Perkins & Co.*, 72 Wash. 16, 129 Pac. 577 (1913), and cases cited), student activity areas, and related facilities to establish an adequate senior high school in accordance with present day educational requirements. The board considered, as disclosed by the evidence, present, as well as possible and probable future needs; population increase and shift; school attendance areas; the increased cost of acquiring additional land, once a community has consolidated around a school house site; the present day concept of one-story school buildings to minimize cost and fire hazard; and the need and extent of student activity areas. The superintendent and the assistant superintendent of the Tacoma school district testified that, in their opinion, the entire tract, including defendant's land, was necessary to accomplish the purpose set forth in resolution No. 175 of the board, even though it be admitted that no buildings would be erected on defendant's land because of the nature of the terrain.

█ Generally, the action of a public agency or a municipal corporation having the right of eminent domain in selecting land for a public use will not be controlled by the courts, except for a manifest abuse of discretion, violation of law, fraud, improper motives, or collusion. This court has frequently held that, in eminent domain proceedings, selection of land to be condemned by the proper public agency is conclusive in the absence of bad faith, or arbitrary, capricious, or fraudulent action. (By CITIES) *Tacoma v. Brown*, 69 Wash. 538, 125 Pac. 940 (1912); *Spokane v. Merriam*, 80 Wash. 222, 141 Pac. 358 (1914); *State ex rel. Church v. Superior Court*, 40 Wn. (2d) 90, 240 P. (2d) 1208 (1952); *State ex rel. Dungan v. Superior Court*, 46 Wn. (2d) 219, 279 P. (2d) 918 (1955). (By COUNTIES) *State ex rel. Flick v. Superior Court*, 144 Wash. 124, 257 Pac. 231 (1927);

*State ex rel. McPherson Bros. Co. v. Superior Court*, 148 Wash. 203, 268 Pac. 603 (1928); (BY STATE) *State ex rel. Bremerton Bridge Co. v. Superior Court*, 194 Wash. 7, 19, 76 P. (2d) 990 (1938); (BY FIRE PROTECTION DISTRICT) *State ex rel. Hunter v. Superior Court*, 34 Wn. (2d) 214, 218, 208 P. (2d) 866 (1949); (BY PUBLIC UTILITY DISTRICT) *State ex rel. Northwestern Electric Co. v. Superior Court*, 28 Wn. (2d) 476, 486, 183 P. (2d) 802, 173 A. L. R. 1351 (1947).

■ It is true that the statute authorizes the court to ". . . set the hearing of such petition [for eminent domain] down for trial by a jury . . ." to determine value only after the court " . . . shall further find that such real estate sought to be taken is required and necessary for the purposes of a schoolhouse site . . ." RCW 8.16.050.

In resolving this issue, however, the court is governed by the rule applicable to other public agencies and municipal corporations, as set forth above.

■ Defendant introduced no evidence. There is nothing to indicate a manifest abuse of discretion by the school board, nor that its determination was arbitrary, capricious, fraudulent, or collusive. If the court's conclusion, quoted *supra*, is to be sustained, it must be on the theory that acquisition of defendant's property is in violation of law, a theory which we have demonstrated to be erroneous; hence, the court's conclusion cannot stand.

Finally, the trial court found

". . . that it is the intent of said School District that the recreational facilities of said school would be used by the surrounding communities."

■ This finding does not foreclose the school district's right of condemnation, for the statute authorizes a district to permit the use of school playgrounds and athletic fields adjacent to a school building ". . . when school is not in session, or when such fields are not in use for a public purpose." RCW 28.58.050.

We agree with the court's conclusion that it is not "the prerogative or *primary right* of the School District to pro-

vide recreational facilities for the surrounding communities." (Italics ours.)

This conclusion, however, is not applicable to the instant case, for it is neither supported by an appropriate finding of fact nor by the evidence.

The resolution of the school board refers to the use of the property only for school facilities. In response to the question,

"Oh, in other words the necessity isn't only for the students during their day there at school and for their evening school activities, but it is likewise for the surrounding community, the residential area?"

the assistant superintendent of schools replied:

"I will answer it this way: *That the facilities are necessary for the students and their program.* The use by the community is an extra dividend that the community draws from such a facility." (Italics ours.)

The order of December 9, 1957, denying order of public use and necessity is reversed. The case is remanded to the trial court, with instructions to enter an order of public use and necessity in accordance with the petition.

It is so ordered.

HILL, C. J., DONWORTH, ROSELLINI and FOSTER, JJ., concur.