**Melvin G. CHAPMAN and Dorothy A. Chapman, Appellants,**

v.

**PUBLIC UTILITY DISTRICT NO. 1 OF DOUGLAS COUNTY, WASHINGTON, a corporation, Appellee.**

**Jack F. NICKELL, Zella Nickell, David L. Nickell and Elaine Violet Nickell, Appellants,**

v.

**PUBLIC UTILITY DISTRICT NO. 1 OF DOUGLAS COUNTY, WASHINGTON, a corporation, Appellee.**

**Nos. 20059, 20060.**

United States Court of Appeals Ninth Circuit.

Oct. 7, 1966.

---

Benjamin H. Kizer, Robert E. Stoeve, Joseph P. Gagliardi, Turner, Stoeve & Layman, Spokane, Wash., for appellants.

Harold A. Pebbles, Pebbles, Swanson & Lindskog, Olympia, Wash.; Hughes & Jeffers, Wenatchee, Wash., for appellee.

Before BARNES, KOELSCH and BROWNING, Circuit Judges.

BROWNING, Circuit Judge.

Appellee holds a license from the Federal Power Commission to construct, operate and maintain the Wells Hydroelectric Project on the Columbia River in the Counties of Douglas, Chelan and Okanogan, in the State of Washington.

Appellee brought this action under 16 U.S.C. § 814 to condemn the fee title to two parcels of land, alleging that the taking was necessary for the purposes stated in its license.

The landowners maintain that appellee can condemn only a flowage easement, and not the fee, for two reasons: (1) because a flowage easement would fully satisfy the purposes of the license, and the fee is therefore unnecessary; and (2) because appellee is estopped from taking the fee.

The district court rejected both contentions, and certified the need for immediate appeal under 28 U.S.C. § 1292 (b). We permitted appeal, and now affirm the district court's order.

The land involved lies along the boundary of the Wells Hyrdoelectric Project. The project boundary was fixed by the Federal Power Commission. The Commission determined where the shoreline would be when the project pool was at its estimated maximum depth, then added a margin of four vertical feet. This margin provides a "freeboard" area along the shore of the pool which, because of the slope of the land, varies in width, on the two tracts involved here, between a few feet and two hundred feet.

The largest part of the acreage in the two tracts (18.9 of the 23.5 acres in one tract, and 2.8 of the 4.4 acres in the other) lies below the maximum pool elevation. The remaining 4.6 acres of one tract and 1.6 acres of the other lie in the freeboard area along the shore.

We consider first the right of the appellee to condemn the fee.

Appellee's board of commissioners decided that it was necessary to take the fee to these lands after consulting "with our land acquisition people, with our legal counsel, with the engineer, and everyone that was concerned with the operation and maintenance of the dam."

The following factors were considered. The acreage below the estimated maximum pool elevation would be inundated most of the time. Some allowance above the estimated maximum pool elevation was required for possible inaccuracies in the computation. The land in the freebroad area up to the boundary of the reservoir would be affected by seepage, erosion, slipping, and sloughing. This damage would be accentuated by frequent and rapid changes in the pool level. Fluctuations of as much as eight feet would be required to meet varying power demands. Inundated acreage and acreage above the maximum pool elevation to a distance of two and one-half vertical feet would have to be cleared of all structures, timber, brush, and refuse, in accordance with the terms of the license. After filling the pool, appellee would be required to police and control the rim of the reservoir to remove drifted timber and other debris, and to prevent building of structures, excavating, filling or other shoreline activity which might stimulate ero-

sion, cause pollution, or involve risk of damage to the generators.[1]

Appellee's engineers stated that it was impossible to anticipate all of the contingencies which might develop affecting the discharge of these responsibilities. It was their opinion that full and unimpeded control of the pool edge and freeboard area was required.

Obligations were placed upon appellee in addition to those connected with the operation and maintenance of the project as an efficient producer of power. The Federal Power Commission, as required by Section 10(a) of the Federal Power Act, 16 U.S.C. § 803(a), based its approval of the Wells Hydroelectric Project in part upon a finding that appellee's proposal was the one best adapted "for other beneficial public uses, including recreational purposes."

Appellee's license required appellee to "allow the public free access, to a reasonable extent, to project waters and adjacent project lands owned by the licensee, for the purpose of full public utilization of such lands and waters for navigation and recreational purposes, including fishing and hunting." Appellee was required to conduct the operation of the project in accordance with such reasonable rules and regulations as the Federal Power Commission "may prescribe for the protection of life, health and property, and in the interest of the fullest practicable conservation and utilization of such waters for power purposes and for other beneficial uses, including recreational purposes." Finally, appellee's license required it to cooperate with the Secretary of Interior in the preparation of a "public use plan" for the project area, and to contribute up to ten thousand dollars to the cost of preparing such a plan.

When this action was filed, the "public use plan" for the project had not yet been completed, and rules and regulations applicable to the operation had not yet been issued. However, appellee had commenced negotiations with the Game Department of the State of Washington with respect to the provisions which the latter would recommend to the Federal Power Commission for inclusion in the "public use plan." Appellee had been advised that the state agency would "strongly insist" that the shore lands be taken in fee, as the only practical means of assuring public use in perpetuity of the impounded waters and the lands surrounding them.

Appellee was also aware that the Department of Interior and Corps of Army Engineers had issued a joint policy statement regarding land acquisition for federal reservior projects, (F.R.Doc. 62–1907, filed Feb. 21, 1962, 27 Fed.Reg. 1734) which provided for acquisition of "adequate interest in lands necessary for the realization of optimum values for all purposes including additional land areas to assure full realization of optimum present and future outdoor recreational and fish and wildlife potentials of each reservoir." The policy statement provided that fee title should be acquired for "lands below a selected freeboard where necessary to safeguard against the effects of saturation, wave action, and bank erosion;" for "lands needed to provide for public access to the maximum flowage line;" for "such lands as are needed to meet present and future requirements for fish and wildlife as determined pursuant to the Fish and Wildlife Coordination Act;" and for "such lands as are needed to meet present and future public requirements for outdoor recreation, as may be authorized by Congress." The statement further provided that "easement in lieu of fee title may be taken only for lands [which are] above the storage pool," and which are "determined to be of no substantial value for protection or enhancement of fish and wildlife resources, or for public outdoor recreation."

On December 28, 1965, after the trial in this case had concluded, the Federal Power Commission issued its Order 313,

---

1. Appellee was authorized by its license to "reserve from public access such portions of the project waters, adjacent banks, and project facilities as may be necessary for the protection of life, health and property. * * * "

F.R.Doc. 65–13870, 30 Fed.Reg. 16198, 18 C.F.R. § 2.7, which provides that the Commission will evaluate the recreational resources of all projects under federal license and will seek the ultimate development of these resources consistent with the needs of the area, and not inconsistent with the primary purpose of the project. Order 313 states that the Commission expects its licensee to assume certain responsibilties, including the following:

"(a) To acquire in fee and include within the project boundary enough land to assure optimum development of the recreational resources afforded by the project. To the extent consistent with the other objectives for the license, such lands to be acquired in fee for recreational purposes shall include the lands adjacent to the exterior margin of any project reservoir plus all other project lands specified in any approved recreational use plan for the project.

"(b) To develop suitable public recreational facilities upon project lands and waters and to make provisions for adequate public access to such project facilities and waters." [2]

■■ By Section 21 of the Federal Power Act, 16 U.S.C. § 814, Congress delegated "the federal eminent domain power" to appellee, as its licensee. FPC v. Tuscarora Indian Nation, 362 U.S. 99, 123, 124, 80 S.Ct. 543, 4 L.Ed.2d 584 (1960). Section 21 requires that "the practice and procedure" in an action to enforce the federal power must "conform as nearly as may be with the practice and procedure" in similar state actions. The substance of the delegated federal power, however, may not be diminished by state law (Public Utility District No. 1 of Pend Oreille County v. FPC, 113 U.S.App.D.C.

363, 308 F.2d 318, 321–323 (D.C.Cir. 1962); United States v. Sixteen Parcels of Land, 281 F.2d 271, 274 (8th Cir. 1960); State of Washington Department of Game v. FPC, 207 F.2d 391, 395–396 (9th Cir. 1953); United States v. State of Montana, 134 F.2d 194, 197 (9th Cir. 1943). See also City of Seattle v. Beezer, 376 U.S. 224, 84 S.Ct. 709, 11 L.Ed.2d 656 (1964); City of Tacoma v. Taxpayers, 357 U.S. 320, 339–340, 78 S.Ct. 1209, 2 L.Ed.2d 1345 (1958). Cf. First Iowa Hydro Elec. Co-op v. FPC, 328 U.S. 152, 165–167, 66 S.Ct. 906, 90 L.Ed. 1143 (1946); Kohl v. United States, 91 U.S. 367, 371, 372, 23 L.Ed. 449 (1875)), although the state may, if it sees fit, delegate to the federal licensee broader and additional authority from the state's own power of eminent domain, Oakland Club v. South Carolina Public Service Authority, 110 F.2d 84, 86 (4th Cir., 1940).

■■ Section 21 of the Federal Power Act, 16 U.S.C. § 814, authorized appellee to condemn land or other property "necessary to the construction, maintenance, or operation" of the licensed project. Appellee's determination of necessity under the federal statute was subject to judicial review, if at all, only to the extent of deciding whether appellee's determination of necessity was arbitrary, capricious, or made in bad faith. Southern Pacific Land Company v. United States, 367 F.2d 161 (9th Cir. 1966). Section 54.16.020 of the Revised Code of Washington conferred upon appellee power to condemn lands, easements and other property "to effectuate" specified purposes, including the generation of electric energy and the development, conservation and distribution of water. Judicial review of the administrative exercise of the delegated state power was like-

2. Appellee submitted a certified copy of Order 313 to this court by letter, after oral argument. The landowners moved to strike, but granting the motion would be a meaningless gesture. The order has been published in the Federal Register, and 44 U.S.C. § 307 provides that "The contents of the Federal Register shall be judicially noticed." Wei v. Robinson, 246 F.

2d 739, 743 (7th Cir. 1957); Green v. United States, 176 F.2d 541, 544 (1st Cir. 1949). However, since Order 313 was not before the district court, and we have not had the benefit of a full consideration by the district court or by the parties of its impact upon the issues, we do not rest our decision upon its provisions.

wise limited to deciding whether the determination of necessity was arbitrary, capricious or in bad faith. City of Tacoma v. Welcker, 65 Wash.2d 677, 399 P.2d 330, 335 (1965); City of Tacoma v. Humble Oil & Refining Co., 57 Wash.2d 257, 356 P.2d 586, 587 (1960); State ex rel. Tacoma School Dist. No. 10 v. Stojack, 53 Wash.2d 55, 330 P.2d 567, 572, 71 A.L.R.2d 1064 (1958).

■ Appellee's determination of necessity under the federal statute was "arbitrary and capricious" only if it "was without adequate determining principle or was unreasoned." United States v. Carmack, 329 U.S. 230, 243, 67 S.Ct. 252, 258, 91 L.Ed. 209 (1946). The state standard was no less severe. "Arbitrary and capricious conduct," the court said in City of Tacoma v. Welcker, supra, 399 P.2d at 335, "is wilful and unreasoning action, without consideration and regard for facts or circumstances [citing]. Action, when exercised honestly, fairly, and upon due consideration is not arbitrary and capricious, even though there be room for a difference of opinion upon the course to follow, or a belief by the reviewing authority that an erroneous conclusion has been reached." See also, State ex rel. Dawes v. Washington State Highway Commission, 63 Wash.2d 34, 385 P.2d 376, 380 (1965).

■ Measured by these standards, appellee's decision to take the fee cannot be characterized as arbitrary or capricious.

It may be true, as the landowners contend, that the uses which can now be specifically identified might be met by the acquisition of a broadly drawn easement. But these presently identifiable uses are so numerous and burdensome as to leave only a minimal estate unaffected and additional and more burdensome uses, not now identifiable, are certain to arise.

The operation and maintenance of the project is subject to physical factors which cannot be fully anticipated or controlled. More important a "public use" plan must be developed which, when approved by the Federal Power Commission, will become part of appellee's obligation under its license. Even before the release of Order 313, it was evident from facts known to appellee that the plan ultimately approved would require appellee to exercise an additional measure of control over the waters and lands adjacent to the reservoir rim.

■ In these circumstances, reasonable prudence dictated the taking of the fee in the first instance to avoid the uncertainty, delay, and expense of an early repetition of the long and costly acquisition process. Both federal and state authorities recognize that the power of eminent domain is not confined to the taking of property for which there is an absolute and immediate need. It extends also to the taking of property which is reasonably necessary, and for which a need will probably exist within a reasonable time. See, for example, Rindge Co. v. County of Los Angeles, 262 U.S. 700, 707, 43 S.Ct. 689, 67 L.Ed. 1186 (1923); Wilson v. United States, 350 F.2d 901, 907 (10th Cir. 1965); United States v. Certain Parcels of Land, 215 F.2d 140, 146–167 (3rd Cir. 1954); City of Tacoma v. Welcker, 399 P.2d 330, 335, 336 (Sup. Ct.Wash.1965); State ex rel. Tacoma School Dist. No. 10 v. Stojack, 330 P.2d 567, 572 (Sup.Ct.Wash.1958). See generally 26 Am.Jur.2d § 116. As the court said in Welcker, "a 'stitch in time' has never been considered capricious. And, the fact that expert witnesses may disagree as to the desirability of one method of protection, as opposed to another, does not perforce render the choice of one arbitrary." [3]

---

3. 399 P.2d at 336. See also, State ex rel. Wenatchee-Beebe Orchard Co. v. Superior Court, 157 Wash.2d 662, 359 P.2d 146, 150 (Sup.Ct.Wash.1961); City of Tacoma v. Humble Oil & Refining Co., 356 P.2d 586, 587 (Sup.Ct.Wash.1960); State ex rel. Tacoma School Dist. No. 10 v. Stojack, 330 P.2d 567, 572 (Sup.Ct.Wash.1958).
   Particularly pertinent discussions are found in Monterey County Flood Control and Water Conservation District v. Hughes, 201 Cal.App.2d 197, 20 Cal.Rptr.

We turn to the landowner's contention that appellee was estopped from taking the fee rather than a flowage easement by the conduct and representations of its agents.

The district court concluded that appellee could be estopped as a matter of law, but that the evidence did not establish estoppel as a matter of fact.

■■ Washington law may permit a government agency to be estopped by representations of its agents. State ex rel. Shannon v. Sponburgh, 66 Wash.2d 135, 401 P.2d 635 (1966). It would not necessarily follow that this state rule could be applied to prevent a federal licensee from exercising the federal power of eminent domain to take property necessary to the accomplishment of a public use licensed by a federal agency. In any event, the district court's factual finding that there was no basis for estoppel is supported by substantial evidence.

The landowners offered testimony that at three meetings with the landowners, agents of the appellee represented that appellee would acquire flowage easements rather than fee titles, and that the landowners, in reliance upon these representations, withdrew a petition for intervention before the Federal Power Commission and dismissed a state court suit. There were some circumstances tending to support this version of the events.

However, witnesses for appellee testified unequivocally that no such representations were made. There was testimony that at the final meeting the landowners were expressly told that appellee would not agree to take flowage easements rather than fee titles. This version also had support in a number of circumstances. Neither the landowners' petition for intervention nor their complaint in the state court litigation mentioned the taking of fee titles rather than flowage easements. A stenographic transcript made of one of the meetings contains no mention of the problem. There is no reference to it in the "letter of intent" which purports to formalize the commitments undertaken by appellee as a result of the negotiations, and which was the basis for the dismissal of the landowners' state litigation.

We cannot hold the district court's resolution of this conflicting evidence clearly erroneous.

Affirmed.

---

252, 261–263 (1962), and Volden v. Selke, 251 Minn. 349, 87 N.W.2d 696, 701 (1958).

Our decision in Warm Springs Irrigation District v. Pacific Live Stock Co., 270 F. 560 (9th Cir. 1921), upon which appellants rely heavily, is distinguishable on the ground, among others, that the condemnor in that case failed to establish that taking the fee, rather than an easement, was necessary to the purposes of project.