# IN THE TAX COURT OF THE
# STATE OF OREGON

## F. E. GLENN

*v.*

## MORROW COUNTY
## UNIFIED RECREATION DISTRICT

### (TC 4211)

F. E. Glenn (Petitioner) appeared *pro se*.

E. Andrew Jordan, Tarlow, Jordan & Schrader, Portland, represented Defendant (county).

Decision for Respondent rendered July 17, 1998.

## CARL N. BYERS, Judge.

Petitioner is an interested taxpayer challenging Respondent's categorization of its 1997-98 property tax levy, a categorization required by Article XI, section 11b, of the Oregon Constitution. Respondent categorized its levy of $450,000 as for "Other Than School Taxes." For the same year, Respondent budgeted $451,792 for "school district activities" to be paid to the Morrow County School District under an intergovernmental agreement. Petitioner claims that such taxes are in fact being used to provide educational services and are therefore subject to that constitutional limitation.

## FACTS

Article XI, section 11b, of the Oregon Constitution (section 11b), was enacted by initiative measure at the general election in November 1990. It imposed new limits on property taxes, distinguishing between taxes used to fund the public school system and taxes used to fund governmental operations other than the public school system. Taxes used to fund government operations, other than the public school system, are limited to $10 for each $1,000 of real market value. The limitation on taxes used to fund the public school system was initially $15 for each $1,000 of value but decreased $2.50 each year until it reached its permanent limitation of $5 per $1,000 in the 1995-96 year.

One general effect of section 11b was to reduce school revenues. On April 18, 1994, the Morrow County School District implemented certain steps to reduce its expenditures. Most notably, it reduced school to four days per week, with no classes held on Friday. It lost nine and one-half teaching positions and eliminated home economics and driver's education. The school board proposed elimination of almost all cocurricular activities not mandated by the State Board of Education. Most of these activities concerned interscholastic athletics, drama productions, and music programs.

In 1992, the state Deputy Superintendent of Public Instruction asked the Oregon Attorney General four questions concerning the use of a parks and recreation district to help fund cocurricular activities. The Attorney General's opinion indicates that a park and recreation district can enter into an intergovernmental agreement with a school district under which the park and recreation district would reimburse the school district for providing recreational activity. The opinion indicates that it does not matter that the school district previously provided the same services, such as interscholastic athletics, drama production, and music programs. The opinion also indicates that as long as the park and recreation district tax levy is not "solely" for the purpose of funding educational services, it will be subject to the $10 limit and not the $5 limit. After becoming aware of the Attorney General's opinion, concerned citizens of Morrow County gathered signatures and petitioned the county court to approve the formation of a recreation district. The court granted the Petition and Respondent was organized.

On September 19, 1995, Morrow County voters approved a three-year serial levy for Respondent. On November 13, 1995, Respondent entered into an intergovernmental agreement with the Morrow County School District. Under the agreement, Respondent will reimburse the school district for providing services which are essentially the same cocurricular activities the school district previously provided out of its own budget. The agreement specifies that none of Respondent's money is to be used by the school district for courses of study required by statute or rules of the State Board of Education or for supplemental courses.

Beginning with the 1995-96 tax year, Respondent levied a tax of $450,000 per year for three years. However, Petitioner's complaint addresses only the 1997-98 levy and is, therefore, the only year before the court. Petitioner alleges, and Respondent admits, that Respondent categorized its levy as for "Other than School Taxes." At the same time, Respondent budgeted $451,792 for "School district Activities," to be paid to the Morrow County School District under its intergovernmental agreement with the district. A Department of Revenue Form LB 30, attached to Petitioner's complaint,

shows that Respondent's total budget for the 1997-98 year was $583,292.

The evidence at trial established two additional significant points: First, Respondent's tax levy is not used solely to fund cocurricular activities of the school district. Respondent conducts a number of other recreational programs and activities for the benefit of citizens of all ages and categories. Second, interscholastic athletics at the high school level are governed by the Oregon Schools' Activities Association (OSAA), a nonprofit corporation, whose activities are sanctioned and subject to approval by the State Board of Education. OSAA rules govern interscholastic competitions and include requirements for students with regard to attendance, grades, and conduct. Although only 75 percent of the high schools in the state are members of OSAA, only members are allowed to participate in league play and championship competitions. A park and recreation district cannot be a member of OSAA.

## ISSUES

1. Are the cocurricular activities provided by the Morrow County School District "educational services"?

2. If Respondent's tax levy is used to fund educational services, then is it subject to the constitutional limitation on revenues used to fund the public school system?

## ANALYSIS

■ In imposing dollar limits on property taxes, Article XI, section 11b, specifies that:

> "Property tax revenues are deemed to be dedicated to funding the public school system if the revenues are to be used exclusively for educational services, including support services, provided by some unit of government, at any level from pre-kindergarten through post-graduate training."

■■ The constitution does not define "educational services." However, the legislature has enacted statutes implementing section 11b and, in doing so, defines educational services for purpose of those statutes. ORS 310.155(4)[1] provides:

---

[1] All references to the Oregon Revised Statutes are to 1995.

"As used in this section, 'educational services' includes:

"(a)   Establishment and maintenance of pre-schools, kindergartens, elementary schools, high schools, community colleges and institutions of higher education.

"(b)   Establishment and maintenance of career schools, adult education programs, evening school programs and schools or facilities for the physically, mentally or emotionally disabled."

ORS 310.155(6) indicates that educational services does *not* include:

"[C]ommunity recreation programs, civic activities, public libraries, programs for custody or care of children or community welfare activities *if* those programs or activities are *provided to the general public and not for the benefit of students* or other participants in the programs and activities described in subsection (4) of this section." (Emphasis added.)

■    Under ORS 310.155(6), the cocurricular activities provided by the Morrow County School District and paid for by Respondent are educational services because they are for the benefit of students and not the general public.

■    Although it is the province of the courts to construe the constitution, the court finds that the legislature's definition of educational services in ORS 310.155(6) is consistent with section 11b. Public schools in Oregon have a long history and a strong cultural tradition of providing cocurricular activities such as interscholastic sports, drama, and music programs. The educators who testified in this case see significant educational benefits in cocurricular activities. Also, only schools can be members of the OSAA, under whose auspices all meaningful interscholastic athletic competitions take place.

■    The fact that the cocurricular activities are provided by the school district is important. The same activities conducted by a recreational district may be seen as recreational rather than educational. Similarly, if a police department conducted a similar program in an effort to do away with gang violence, it could be viewed as for public safety and welfare. When cocurricular activities are conducted in the school

context, they take on the character and color of education. Athletic coaches, music directors, and drama teachers are typically teachers in the students' classrooms. Only students may participate in the programs and they must meet minimal attendance and scholastic requirements to remain eligible. Cases from other jurisdictions indicate that cocurricular activities are uniformly viewed as educational. *Harris v. U of M Bd. of Regents*, 558 NW2d 225 (Mich Ct App 1996); *Boyd v. Bd. of Directors of McGehee School Dist.*, 612 F Supp 86 (ED Ark 1985); *Brenden v. Independent School District 742*, 477 F2d 1292 (8th Cir 1973); *State v. Stojack*, 330 P2d 567 (Wash 1958); *Moyer v. Board of Education*, 62 NE2d 802, (Ill 1945); *Wysong v. Walden*, 52 SE2d 392 (W Va 1938). The court therefore finds that the cocurricular activities provided by the Morrow County School District under contract with Respondent are educational services within the meaning of section 11b.

Having so concluded, the court turns to whether Respondent's tax levy is subject to the constitutional limit on taxes imposed to fund the public school system.

■ Section 11b requires taxes to be separated into two categories:

> "One which dedicates revenues raised specifically to fund the public school system and one which dedicates revenues raised to fund government operations other than the public school system."

■ That curious phrasing suggests that placing taxes in a category "dedicates" those taxes to that purpose. However, that interpretation is not in harmony with the purpose of section 11b. Section 11b was not to direct how funds are to be used but to limit the taxes that can be imposed for particular purposes. As explained below, section 11b makes no provision for who is to categorize the taxes. Also, there is no indication of how a dedication is to be enforced, if that was intended. There is no suggestion in the constitution that either the budgeting process or the process by which expenditures are made by units of government are to be changed or affected. Tax revenues are typically only one of several sources of government revenue. Except for special taxes, such as those imposed to pay bonded indebtedness, tax revenues

are usually not "dedicated" or committed to any particular type of expenditure.

■■■ The court does not believe the public's intent was to impose a new method of dedicating funds to specific uses. Rather, the public intended that funds dedicated or raised specifically to fund the public school system be categorized separately from funds for other governmental functions. The limitation is imposed on taxes based on their *intended* use. Consequently, the limitation does not affect the actual expenditures of the revenues raised. That is, taxes raised to fund the public school system could be used for other governmental functions without violating the constitution. For example, a school district could expend some of its funds to operate its swimming pool and gymnasium for the benefit of a city sponsored summer recreation program. While section 11b limits the amount of property taxes a school district may raise, it does not dedicate those funds to providing only educational services.

■■ ■■ In considering the constitutional requirement that taxes be categorized, the immediate question is: "How is this to be done?" Section 11b does not indicate who is to make the categorization nor does it establish any administrative procedure. However, it does contain language implying that the nature or function of the governmental unit imposing the tax determines which category the tax falls in. Section 11b(4) recognizes that the limitations may require tax levies to be reduced to stay within the limitations. In relevant part, it states:

> "In the event that taxes * * * should exceed the limitation imposed on either *category of taxing units* defined in subsection (1) of this section, then * * * the taxes imposed upon such property by the *taxing units in that category* shall be reduced * * *." (Emphasis added.)

The categories defined in subsection (1) of section 11b are: (1) "the public school system," and (2) "government operations other than the public school system." Thus the quoted language suggests that every taxing unit falls into one of the two categories. In fact, subsection (4) suggests that the limitation is on the category of taxing unit. This is somewhat at variance with the language in subsection (1) unless

the category or function of the taxing unit is assumed to be congruent with the purpose for which the taxes are raised.

The legislature has enacted definitions of each category as follows:

"(1)   For purposes of ORS 310.150, taxes are levied to fund the public school system if the taxes will be used exclusively for educational services, including support services, provided by any unit of government, at any level from prekindergarten through post-graduate training.

"(2)   Taxes on property levied by a unit of government whose principal function is to provide educational services shall be considered to be dedicated to fund the public school system unless the sole purpose of a particular, voter approved levy is for other than educational services or support services as defined in this section.

"(3)   Taxes on property levied by a unit of government whose principal function is to perform government operations other than educational services shall be considered to be dedicated to fund the public school system only if the sole purpose of a particular, voter approved levy is for educational services or support services as defined in this section." ORS 310.155

■ ■ Those statutory definitions presume an identity between the function of the governmental unit and the purpose for which the taxes are imposed unless "the sole purpose of a particular, voter approved levy" is otherwise. The court finds these definitions are consistent with the language and intent of section 11b. As enacted by the people, section 11b evidences an intent to limit the taxes imposed by each category based upon the function of the unit of government imposing the tax. However, the wording of the constitution is not so specific or definite as to preclude a unit of government in one category from levying a tax in another category. Accordingly, the legislature's exception of a particular voter-approved levy is consistent with the demands of section 11b.

It is undisputed that Respondent is a recreation district formed under ORS chapter 266. That chapter authorizes such districts to "provide park and recreation facilities." ORS 266.110. The statutory delineation of powers is directed toward the "acquisition of parks and other facilities." Those

powers are sufficiently circumscribed so that it is not possible to view Respondent as a governmental unit whose primary function is to provide educational services. Accordingly, Respondent's tax levy is deemed made for governmental operations other than to fund the public school system.

Likewise, it is clear that the sole purpose of the levy involved here was not for educational services. The explanation on the ballot indicated that the levy was to continue several programs for school-age students which had been eliminated or reduced because of funding shortfalls. The explanation mentions certain programs such as "art, athletics, drama club, debate, student yearbook and newspaper, music performances including band and choir, vocational, marketing, business clubs and outdoor school." All of these programs are to be administered by the Morrow County School District through an agreement with Respondent. However, the explanation also states:

"The levy also includes a portion for community activities. Community activities will be administered by the M.C.U.R.D."

The ballot explanation does not indicate how much will be spent on educational services and how much will be spent on other community recreation activities. Accordingly, the levy was not for the sole purpose of funding educational services.

The court realizes that this decision may be viewed as permitting circumvention of the limitations of section 11b. This is troublesome in light of the fact that section 11b was intended to reduce the public school system's reliance on property tax revenues and force the legislature to provide other school funding. However, the court cannot ignore the plain language of the constitution. The wording of section 11b effectively works against itself by focusing on the unit levying the tax instead of the actual expenditures made by that unit.

In summary, section 11b requires taxes to be categorized as funding the public education system only if they are to be used exclusively for educational services. No governmental unit whose primary function is to provide services other than educational services is required to categorize a

mixed levy as partly for educational services. Accordingly, judgment will be entered denying Petitioner's Petition and holding that Respondent's levy was valid. Costs to neither party.