SHILO INN PORTLAND/205, LLC,
*Petitioner,*

*v.*

MULTNOMAH COUNTY,
City of Portland and
Portland Development Commission,
*Respondents,*

*and*

DEPARTMENT OF REVENUE,
*Intervenor.*

(TC 4370)

Oral argument on Respondent Portland Development Commission's Motion for Summary Judgment was held July 22, 1999, in the courtroom of the Oregon Tax Court, Salem.

Gregory W. Byrne, Portland, argued the cause for Petitioner.

Sandra Duffy, Chief Assistant County Counsel, Multnomah County Counsel, Portland, filed an answer to Petitioner's amended petition and joined in Respondent City of Portland's Motion for Partial Summary Judgment and in Respondent Portland Development Commission's motion for summary Judgment but did not argue the cause for Respondent Multnomah County.

Linda Meng, Chief Deputy City Attorney, Portland City Attorney's Office, Portland, argued the cause for Respondent City of Portland (the city).

Jeannette M. Launer, Portland, argued the cause for Respondent Portland Development Commission (PDC).

Douglas M. Adair, Assistant Attorney General, Department of Justice, Salem, argued the cause for Intervenor.

Decision for Respondent Portland Development Commission rendered July 28, 1999.

**CARL N. BYERS, Judge.**

Petitioner seeks a declaration that the 1998-99 taxes on its property located in an urban renewal area exceeded the limits imposed by Article XI, section 11b, of the Oregon Constitution. Petitioner's basic claim is that taxes categorized as dedicated to funding the public school system but used to pay urban renewal indebtedness are, for purposes of section 11b, funds used for government operations other than public schools. Respondents assert that section 11b does not control how property taxes are actually used or expended.

There is no dispute of material fact. This matter is before the court on Portland Development Commission's (PDC) motion for summary judgment. The City of Portland (the city) also filed a motion for partial summary judgment opposing Petitioner's Motion for Class Action Status and joining in PDC's motion for summary judgment. Oral arguments on the motions were heard on July 22, 1999.[1]

BACKGROUND

Oregon's populist efforts in this last decade of the twentieth century to limit property taxes have created a level of complexity and confusion approaching that of federal income tax laws. In this particular litigation, three provisions

---

[1] Petitions filed under ORS 305.583 to determine the effect of Article XI, section 11b, of the Oregon Constitution, on taxes have priority over all other cases pending before the Oregon Tax Court. ORS 305.580(2).

All references to Oregon Revised Statutes are to 1997.

of the Oregon Constitution not only contribute to the confusion but also provide the legal landmarks for the court's decision.

The first is Article IX, section 1c, of the Oregon Constitution, adopted in 1960, authorizing the legislature to enact laws that divide property taxes in urban renewal areas. Property taxes levied on increases in value occurring after the adoption of an urban renewal plan are used to pay any indebtedness incurred for redevelopment or urban renewal projects.

The second provision is Article XI, section 11b, of the Oregon Constitution. That was enacted as initiative Measure 5 in the 1990 general election to impose limits on property taxes. It requires property taxes to be divided into two categories: (1) one that dedicates revenues raised to fund the public school system (limited to $5 per $1,000 of real market value), and (2) one that dedicates revenues raised to fund government operations other than public schools (limited to $10 per $1,000 of real market value).

In 1997, a third feature was adopted by referendum (Measure 50) constituting a new section 11, Article XI of the Oregon Constitution. That provision imposes additional limits on property taxes by establishing a maximum assessed value and mandating a 17 percent reduction in taxes. That constitutional amendment also converted the property tax system from a tax-base system to a tax-rate system.

To implement the above constitutional provisions, the legislature has enacted a number of statutes. Due to the nature and relationship of the constitutional provisions, the statutory processes implementing their mandates are complicated. One source of confusion is the use of different terms for what is essentially the same concept. For example: Article IX, section 1c refers to "taxing units"; Article XI, section 11b speaks of "governmental units"; and Article XI, section 11 focuses on "taxing districts."

A simplified explanation of the administrative process is as follows: each taxing district must give written notice to the assessor of the taxes to be imposed for that year. ORS 310.060. The notice must categorize the taxes for purposes of

section 11b. ORS 310.150 requires taxes to be categorized as: (1) payment of exempt bonded indebtedness (exempt from the limits of section 11b), (2) dedicated to funding the public school system (excluding exempt bonded indebtedness), or (3) dedicated to funding government operations other than public schools (excluding exempt bonded indebtedness).

If taxes are incorrectly categorized, then the Department of Revenue notifies the assessor and the assessor extends the taxes on the roll in a manner that complies with the constitution. However, ORS 310.070 indicates that taxes are only incorrectly categorized if either: (1) the taxing unit does not have statutory authority to impose taxes in that category, or (2) the Oregon Tax Court or the Oregon Supreme Court make a final decision that the correct category is different.

## FACTS

Petitioner owns two parcels of real property located in an urban renewal area established by the city and PDC in 1986. The real market value for Petitioner's property for the 1998-99 tax year was $15,297,600 and the assessed value was $11,155,970. Petitioner paid $234,005.06 in ad valorem property taxes, of which $137,091.59 was shown on its property tax statement as taxes for government operations other than schools.

Petitioner asserts that the amount of taxes used for government functions other than public schools exceeds the limit of section 11b. That is based on Petitioner's calculations as follows: First, Petitioner calculated the ratio between that portion of the urban renewal "increase" on which taxes are imposed and the total assessed value on which taxes are levied. Petitioner found that ratio to be 22.844 percent. Petitioner then multiplied that ratio by $234,005.06 to obtain $53,456, the amount of taxes paid on the property that were used for urban renewal for the year.

Second, Petitioner reasoned that the remaining taxes of $180,479 would have been divided between funding for public schools and funding for government operations other than schools. Petitioner determined the ratio of the tax rate for government operations other than schools ($12.1288

per $1,000) to the total tax rate ($20.7206 per $1,000). That resulted in a ratio of 58.535 percent. When $180,479 is multiplied by 58.535 percent, it indicates that $105,643 (rounded) was paid for government operations other than schools. Petitioner therefore concludes that when $105,643 is added to $53,456, it has paid a total of $159,099 for government operations other than schools.

As a third and final step, Petitioner multiplied $10 for every $1,000 of real market value of its property to obtain the 11b limits on taxes for government operations other than schools. That resulted in an amount of $152,297. Petitioner concluded that because the "actual" amount used for government operations other than public schools was $159,099, the limits of section 11b were exceeded by $6,129. Although this is a relatively modest amount, Petitioner asserts that the total taxes in excess of section 11b in Petitioner's urban renewal area was $7,586,244. Accordingly, Petitioner filed a motion for class action status in an effort to obtain refunds of all of that "excess."

## ISSUE

When applying the limits of section 11b, must property taxes categorized as dedicated to funding public schools, but used for urban renewal, be deemed taxes for government operations other than schools?

## ANALYSIS

■ Although they have different perspectives, the parties do not disagree as to the administrative processes by which taxes are collected. All parties acknowledge that taxes are categorized by the taxing districts imposing the tax for purposes of section 11b. The assessor computes the rate of tax for each category, first applying the limits of section 11b. *See* ORS 310.210. Based on the notice filed by the urban renewal agency, the assessor also calculates the amount to be raised for purposes of urban renewal. ORS 447.440. Petitioner's premise is that taxes categorized as dedicated for funding public schools must be used for that purpose. Petitioner contends that where such taxes are in fact divided and a portion sent to an urban renewal agency, that portion used for urban

renewal must be included in the measure as funds for government operations other than schools. In support of its position, Petitioner cites section 11b, specifically providing:

> "Property tax revenues are deemed to be dedicated to funding the public school system if the revenues are to be *used* exclusively for educational services * * *." Or Const, Art XI, § 11b(1). (Emphasis added.)

In addition to this specific language, Petitioner points to Article XI, section 11, which has numerous provisions confirming that section 11b limits apply.

■ ■    The court has previously ruled contrary to Petitioner's position. In *Glenn v. Morrow Cty. Unified Recreation Dist.*, 14 OTR 344, 351-52 (1998), this court pointed out that the constitution's emphasis is on the governmental unit categorizing the tax and not on the use of the tax. Specifically, section 11b(4) refers to "either category of taxing units" and the taxes imposed by the "taxing units in that category." The court noted that implementing statutes were consistent with that language in presuming "an identity between the function of the governmental unit and the purpose for which the taxes are imposed." *Id.* at 352. The court there concluded:

> "* * * As enacted by the people, section 11b evidences an intent to limit the taxes imposed by each category based upon the function of the unit of government imposing the tax. However, the wording of the constitution is not so specific or definite as to preclude a unit of government in one category from levying a tax in another category." *Id.* at 352-53.

■    In perspective, when the citizens of Oregon adopted section 11b, they imposed a simple set of limits on a not-so-simple tax system. As a consequence, those limits can have apparently unexpected consequences in both directions. In *City of Portland v. Smith*, 12 OTR 208 (1992), *aff'd* 314 Or 178, 838 P2d 538 (1992), this court held that urban renewal taxes collected under Article IX, section 1c, of the Oregon Constitution, are subject to the limits of section 11b. Now the court has determined that section 11b does not require any more than that taxes be appropriately categorized at the time they are imposed. As mentioned, section 11b does not address

the distribution or expenditure of taxes. There is no indication that the public intended to change the method by which taxes are divided under section 1c for purposes of funding urban renewal. After examining the text and context of section 11b, the court has concluded that if the public intended a change, then it was necessary to specifically address the problem.

Although section 11b does not specifically mention urban renewal, that topic is addressed in the more recently enacted Measure 50, now Article XI, section 11, of the Oregon Constitution. That section addresses both the limits of section 11b and the problem of dividing taxes for urban renewal. Section 11(15) provides:

> "If ad valorem property taxes are divided as provided in section 1c, Article IX of this Constitution, in order to fund a redevelopment or urban renewal project, then notwithstanding subsection (1) of this section, the ad valorem property taxes levied against the increase shall be used exclusively to pay any indebtedness incurred for the redevelopment or urban renewal project." Or Const, Art XI, § 11(15).

When read in light of the issue before the court, this provision clearly affirms that taxes will continue to be divided as permitted by Article IX, section 1c, of the Oregon Constitution, to fund urban renewal projects. To avoid this result, section 11b or section 11 would have to indicate that a school's tax rate is only to be applied to the frozen value. There is no such language anywhere in the constitution.[2]

In addition, section 11(16) states:

> "The Legislative Assembly shall enact laws that allow collection of ad valorem property taxes sufficient to pay, when due, indebtedness incurred to carry out urban renewal plans existing on December 5, 1996. These collections shall cease when the indebtedness is paid. Unless excepted from limitation under section 11b of the Article, as modified by subsection (11) of this section, nothing in this subsection shall be construed to remove ad valorem property taxes levied against the increase from the dollar limits

---

[2] It is important to note that because urban renewal agencies do not levy taxes, such a result would leave urban renewal districts without funds to meet their obligations.

in paragraph (b) of subsection (11) of this section." Or Const, Art XI, § 11(16).

■ That provision expressly authorizes the legislature to enact laws to ensure that urban renewal debts are paid. At the same time, subsection (16) indicates that any such taxes imposed, "unless excepted from limitation under section 11b," remain subject to the limits of 11b. Hence, taxes imposed "against the increase" are not exempted from "the dollar limits" of section 11b. Section 11b does not refer to just the limit on taxes for government operations other than schools. Use of the plural "limits" refers both to the $5 per $1,000 limit for public schools and to the $10 per $1,000 limit for governmental operations other than schools. That evidences an intent that such limits are applied to the categories as made by the taxing districts when the taxes are imposed.

Consistent with subsection (16), the legislature has enacted ORS 310.150(7), which provides:

> "The determination of the appropriate category for an item of tax is based on the tax as certified by the taxing district under ORS 310.060 and not based on the tax imposed on the urban renewal increment as described in ORS chapter 457."

■■ Petitioner contends that this statute is in conflict with the constitution and therefore is void. The court concludes that the statute is not void but is consistent with both section 11 and section 11b. As Respondents point out, section 11(11)(b) redefines the area for testing the limits of section 11b. It uses terms indicating that the limits of 11b are based on the taxes imposed, not the taxes expended. Specifically, section 11(11)(b) states that the limits "shall be determined on the basis of property *tax imposed* in each geographic area taxed by the same local *taxing districts*." (Emphasis added.) Although section 11b obviously contemplated that taxes would be used for the purposes as categorized, it contains no mechanism for ascertaining or verifying the actual expenditure of taxes. It provides only for categorization at the time of imposition. Consequently, if taxes are properly categorized and the rate imposed in each category is within the limits of section 11b, then that is the end of the 11b inquiry.

In summary, the statutory scheme by which taxes are categorized for purposes of Article XI, section 11b, of the Oregon Constitution, is consistent with the requirements of that section. Additionally, the dividing of taxes for purposes of urban renewal, including taxes dedicated for funding public schools, does not change the category for purposes of section 11b. Now, therefore,

IT IS ORDERED that Respondent Portland Development Commission's Motion for Summary Judgment is granted, and

IT IS FURTHER ORDERED that Petitioner's Motion for Class Action Status and Respondent City of Portland's Motion for Partial Summary Judgment are denied as moot.